Daryle GILYARD, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 70467.

Missouri Court of Appeals,
Western District.

Feb. 23, 2010.

S. Kate Webber, Kansas City, MO, for Appellant.

Chris Koster, John W. Grantham, Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., MARK D. PFEIFFER, and KAREN KING MITCHELL, JJ.

JAMES EDWARD WELSH, Judge.

Daryle Gilyard appeals the circuit court's judgment denying his Rule 24.035 motion for post-conviction relief after an evidentiary hearing. Gilyard pleaded guilty to one count of first degree assault and one count of armed criminal action for which he was sentenced to eighteen years imprisonment on each count, with the sentences to run concurrently. In this appeal, Gilyard alleges that his plea was involuntary because his plea counsel coerced him into pleading. In particular, Gilyard asserts that his plea counsel: (1) told him that he would definitely be sentenced to twenty-five years imprisonment if he went to trial, (2) failed to explain the elements of assault in the first degree, and (3) failed to "ensure that he would not necessarily be convicted at trial." We affirm.

Daryle Gilyard was charged with one count of first-degree assault with serious physical injury and one count of armed criminal action. Gilyard entered a plea of guilty on September 14, 2007, in exchange

for an agreement from the prosecutor to recommend not more than a twenty-year term of imprisonment.

At his guilty plea, Gilyard testified that it was his desire to enter into a plea of guilty. He acknowledged that he had completed eleventh grade, and could read, write, and understand English. Gilyard also acknowledged that he understood and was aware of everything that had happened in court so far.

Gilyard stated that he understood he had a right to a jury trial; that he understood that a jury may or may not find him guilty; and that, if he were found guilty, he could be sentenced to more or less time than he would receive after a guilty plea. By pleading guilty, Gilyard stated he knew he was giving up his right to a jury trial. He also said that he understood the range of punishment for each offense. Further, Gilyard said that he understood that if the court ordered the sentences to be served consecutively then he could be ordered to serve up to two consecutive life sentences. The court explained to Gilyard that it would consider all of the evidence and the arguments at sentencing but noted that it did not anticipate, based on what the court knew about the case up until that point, that it would sentence Gilyard to the statutory minimum terms.

Gilyard then testified as to his version of what happened during the incident. Gilyard said that he was riding in a vehicle, stuck a gun out the window, and shot at the victim. Gilyard stated that he later learned that his shot actually hit the victim. The victim lost his right eye as a result. Gilyard admitted that it was his intent to assault the victim and that he used a shotgun in the assault. Gilyard then entered guilty pleas to both charges.

The circuit court then asked the prosecutor about some of the other evidence in the case. The prosecutor informed the court that the shotgun had been recovered, that testing had confirmed that the shotgun was operational, and that police found a shell casing that had been shot from the shotgun in the vehicle from which Gilyard fired the shot. The prosecutor also stated that Gilyard's co-defendants had made statements to the police and were prepared to testify that the group had decided that they were going to "get" the victim and that there was going to be a shooting. Further, the co-defendants said that, because the shotgun had only one remaining shell, Gilyard was told that he "better not miss." Gilyard affirmed that he expected the State to produce this evidence at trial and again pleaded guilty to both offenses.

Gilyard then answered the circuit court's questions about his attorneys. Gilyard said that his attorneys had done everything asked of them and that they had not done anything against his wishes. He said that his attorneys explained his constitutional rights to him, told him that he did not have to plead guilty, and told him that they could go to trial if Gilyard wished. Gilyard told the circuit court that he had no complaint about either of his attorneys. He said that his attorney had discussed with him the possible consequences of going to trial and said that he considered those possibilities when he decided to plead guilty. He also said that no one told him how to answer the court's questions; that no one threatened him to make him plead guilty; that no one promised him anything outside the terms, which were stated in open court; and that no one said anything to him make him feel as if he had to plead guilty.

Gilyard said he was pleading guilty because he had committed the offense. Gilyard further said that he wanted the court to accept his pleas of guilty and that all his statements were truthful. The court then found that Gilyard had voluntarily, freely,

and intelligently entered into the pleas and accepted Gilyard's pleas of guilty to assault in the first degree and armed criminal action.

At some point prior to sentencing, Gilyard filed a motion to withdraw his plea. At the sentencing hearing, the circuit court took up the motion, and Gilyard testified that his attorney had not done everything that possibly could have been done in his case and complained that the case had proceeded toward trial too quickly, as the case was not yet ten months old. The circuit court found that Gilyard failed to present adequate legal grounds to allow him to withdraw his plea. The circuit court thereafter sentenced Gilyard to eighteen years imprisonment on each count with the sentences to run concurrently.

The circuit court then proceeded to examine Gilyard about the services he received from his attorneys. Gilyard stated that his attorneys did not do everything he asked them to do. Gilyard complained, "[W]e didn't have—we—nothing in my defense." When asked to elaborate, Gilyard tried to explain that he did not intend to shoot the victim and that he meant only to intimidate the victim. He also complained again that the case had proceeded toward trial too quickly. Gilyard then affirmed to the circuit court that his attorneys showed him the discovery; that they showed him and explained the charges against him; that they told him what they anticipated the evidence to be at trial; that they asked him his version of the facts; that they asked him if he had any witnesses but that he had none except the co-defendants; that his attorneys told him about his trial rights; and that his attorney told him that he would take the case to trial if Gilyard wanted a trial. Gilyard then stated that he had no other complaints about his attorneys.

On January 22, 2008, Gilyard filed a *pro se* motion for post-conviction relief under Rule 24.035 claiming that he was coerced to plead guilty due to the ineffective assistance of his counsel. On April 28, 2008, post-conviction counsel filed an amended motion in which Gilyard claimed that his plea was induced by plea counsel's advice that he could not win at trial and that he must plead guilty.

On October 2, 2008, the circuit court held an evidentiary hearing. Gilyard testified at the evidentiary hearing that plea counsel told him that if he went to trial that he would get at least twenty-five years in prison but that, if he pleaded guilty, he would get no more than twenty years. Gilyard also stated that his attorney never explained to him that it was his decision whether to plead guilty or to go to trial. When Gilyard was asked if he thought it was his choice, he responded: "Well, I thought I was just—I was just taking his advice. I figured he was my lawyer, so I just was taking his advice." Gilyard said that his lawyer never told him that there was a chance that he might be found not guilty. Gilyard said that his lawyer did not speak to him about a trial but always jumped right to the issue of sentencing. Gilyard denied that his attorney explained the elements of first-degree assault or the concept of mental state to him.

Gilyard claimed that, when he told the court that he intended to assault the victim, he meant that he intended to intimidate or scare the victim. Gilyard said that, at the time of the plea, he thought that his intent to intimidate the victim would constitute an assault and that his attorney did not explain the meaning of "assault" to him. Gilyard said that his attorney did not explain the difference to him between intending to cause someone

injury and just intending to cause them fear.

Gilyard stated that he told plea counsel his version of what happened but that plea counsel told him that he had to tell the judge that he knowingly committed the crime and knew what he was doing when he did it or the judge would not allow his plea to go through. Gilyard testified that it was not his voluntary choice to plead guilty but that he wanted to go to trial. On cross-examination, however, Gilyard admitted that plea counsel told him that he was willing to take the case to trial. Gilyard did not call his plea counsel as a witness at the evidentiary hearing.

On November 12, 2008, the circuit court denied Gilyard's motion for post-conviction relief. Gilyard appeals.

■ Our review of the circuit court's ruling on a Rule 24.035 motion is limited to determining whether its findings and conclusions are clearly erroneous. Rule 24.035(k). Findings and conclusions are clearly erroneous only if we have a definite and firm impression that a mistake was made. *Dobbins v. State,* 187 S.W.3d 865, 866 (Mo. banc 2006).

On appeal, Gilyard contends that his plea was involuntary because his plea counsel coerced him into pleading. In particular, Gilyard alleges that his plea counsel: (1) told him that he would definitely be sentenced to twenty-five years imprisonment if we went to trial, (2) failed to explain the elements of assault in the first degree, and (3) failed to "ensure that he would not necessarily be convicted at trial."

The problem with Gilyard's allegations is that he did not assert any of these claims in his post-conviction motion. In his amended motion for post-conviction relief, Gilyard complained that he was induced to plead guilty by plea counsel's improper advice that he could not win at trial and must plead guilty and that he feared taking his case to trial because his attorney failed to properly prepare for trial. Nowhere in his amended motion does Gilyard assert that his plea counsel told him that he would definitely be sentenced to twenty-five years imprisonment if he went to trial or that his plea counsel failed to explain the elements of assault in the first degree. Moreover, we cannot find in his motions Gilyard's allegation that his plea counsel failed to "ensure that he would not necessarily be convicted at trial." None of these allegations appear in Gilyard's pro se motion or amended motion for post-conviction relief.

■ Rule 24.035(d) provides: "The motion to vacate shall include every claim known to the movant for vacating, setting aside, or correcting the judgment or sentence.... [T]he movant waives any claim for relief known to the movant that is not listed in the motion." Thus, when claims on appeal are not asserted in an original or amended post-conviction motion, they are waived. *State v. Shafer,* 969 S.W.2d 719, 740 (Mo. banc), *cert. denied,* 525 U.S. 969, 119 S.Ct. 419, 142 L.Ed.2d 340 (1998). Indeed, plain error review is not even available. *Edwards v. State,* 954 S.W.2d 403, 408 (Mo.App.1997). As Judge Breckenridge stated in *Edwards,* when a defendant fails to raise a claim in his Rule 24.035 motion, he waives it:

> Under Rule 24.035(d), the post-conviction motion must include all claims and those not raised in the motion are waived. *Johnson v. State,* 921 S.W.2d 48, 50 (Mo.App.1996).... Plain error review is also unavailable. "Because the appellate court lacks jurisdiction to consider these claims, they are not eligible for plain error review under Rule

215

84.13(c)." *State v. Dees,* 916 S.W.2d 287, 302 (Mo.App.1995) (citation omitted).

*Id.*

Because Gilyard did not raise these issues in his Rule 24.035 motion, he cannot raise these issues for the first time on appeal. *Amrine v. State,* 785 S.W.2d 531, 535 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990); *Collins v. State,* 228 S.W.3d 40, 42 (Mo. App.2007); *Day v. State,* 208 S.W.3d 294, 295 (Mo.App.2006); *Dean v. State,* 950 S.W.2d 873, 877 (Mo.App.1997).

The circuit court did not clearly err in denying Gilyard's Rule 24.035 motion for post-conviction relief. We, therefore, affirm the circuit court's judgment.

All concur.