

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| CAVONA C. FLENOY, | ) | |
| | ) | |
| Appellant, | ) | WD76722 |
| | ) | |
| v. | ) | OPINION FILED: October 28, 2014 |
| | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Platte County, Missouri**
The Honorable Owens Lee Hull, Jr., Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

Cavona C. Flenoy ("Flenoy") appeals the denial of her Rule 24.035 motion following an evidentiary hearing. Flenoy claims her trial counsel failed to adequately advise her about the law of self-defense given her youth and mental health issues, and that but for her failure to understand the law of self-defense as applied to her case, she would not have chosen to plead guilty. Because Flenoy's claim on appeal was not asserted in her post-conviction motion, the claim has been waived and is not subject to our review. The judgment denying Flenoy's 24.035 motion is affirmed.

## Factual and Procedural Background

Flenoy was charged in the Circuit Court of Platte County with murder in the second degree, armed criminal action, stealing a motor vehicle, and stealing a credit card. She pled guilty to these charges on December 9, 2010. During the guilty plea hearing, the state indicated it would present the following evidence against Flenoy if the case were to proceed to trial:

> Your Honor, if this case were to be tried, the state would prove that March 9, 2010, at 7:23 p.m., officers of the Riverside Department of Public Safety were dispatched to 4911 N.W. Gateway Drive, Apartment 23, here in Platte County, Missouri. On their arrival they contacted a resident identified as Hany S. Osman. Mr. Osman advised officers that his roommate was lying on the floor covered with blood just inside the apartment doorway. The officers and the responding fire personnel and EMS workers determined that the injured subject had suffered apparent multiple gunshot wounds. He was identified as Hassan A. Abbas and lived in that apartment. Mr. Abbas was unconscious and unresponsive. However, a faint pulse was found by EMS workers and he was transported to North Kansas City Hospital where he was later pronounced dead. The scene was secured by officers; detectives and Kansas City Missouri Police Department Crime Scene Investigative Unit officers processed the apartment crime scene.
>
> Investigation of the scene determined the victim's car, a 1995 dark blue Honda Accord with Missouri license plate No. CA1-S4F was missing from the parking lot of the apartment complex along with keys to the vehicle and the victim's wallet and cell phone. It was later determined that the victim had sustained multiple gunshot wounds to the chest, face, and side. Spent .40 caliber shell casings and spent bullet rounds were recovered from the victim's bedroom. Apparent blood was found on the victim's bedroom and on the bedroom wall and floor. Small size 7 pair of women's tennis shoes were also found in the bedroom. A subsequent autopsy of Mr. Abbas determined the victim died as the result of multiple gunshot wounds to the torso, according to the Jackson County Medical Examiner's Office.
>
> Further investigation determined that the victim had recently been introduced to a young black female in the Kansas City, Kansas area and that he had brought her to the apartment over the previous weekend on two occasions. The woman was described as a black female in her early 20's,

2

five feet to five feet two inches, a hundred and twenty pounds, medium complexion, with short hair. Her name was not initially known. However, subsequent investigation resulted in the identification of that young black female as Cavona C. Flenoy, the defendant in this case. Two witnesses identified Ms. Flenoy from a photo spread of six young black females with similar features.

On March 11, 2010 Ms. Flenoy was seen in a parking lot in Kansas City, Kansas, driving the victim's vehicle. The investigation also revealed that [t]he defendant had attempted to use the victim's credit card at a gas station following the murder.

On March 11, 2010, detectives located the defendant and asked her if she would be willing to accompany them to answer some questions. The defendant volunteered to accompany detectives to the Riverside Department of Public Safety to be interviewed. The defendant did not ask what the detectives wanted to talk to her about, but she was cooperative.

The detective initiated an interview and advised the defendant of her Miranda Rights which she acknowledged she understood and signed a standard Miranda Waiver form. During the interview the defendant acknowledged that she shot the victim several times with a .40 caliber handgun she had purchased from a friend of her cousin the Saturday previous, that would be March 6, 2010, for a hundred dollars. She had the handgun in a backpack and she -- and she had that backpack with her, including the gun, when the victim brought her back to his apartment at around 6:30 p.m. on March 9, 2010. The defendant also admitted that she took the victim's car when she ran from the apartment. She later changed the license plate on the victim's car to her old license that she had on a Honda car. She acknowledged that she also had the victim's wallet and attempted to buy gas for his Honda with one of his credit cards. The Honda was subsequently located where the defendant was first contacted by detectives.

During a break in the interview with the defendant, the defendant was left alone in the interview room with a pad of paper. Among other things, she wrote on that pad of paper, and I quote, ["]I push him down like I was going to fuck him. I got the gun and I just pulled the trigger."

That would be the state's evidence in this case, Your Honor.

3

Flenoy's trial counsel advised the plea court that the state's recitation of the evidence was consistent with what had been revealed through discovery. Trial counsel also advised the plea court "that my client has indicated to me that she has somewhat of a self-defense argument but that she is wanting to set that aside for purposes of the plea as we don't believe that -- it may not rise to the legal standard to pass through a jury. But it is something that she will want to present in sentencing as kind of surrounding circumstances." Trial counsel then asked Flenoy to confirm that she understand the evidence the state had recited, and that "we've discussed any potential defenses, but you wish to set those aside at this time and go forward with the plea. Is that correct?" Flenoy answered, "Yes."

The plea court asked Flenoy to confirm certain of the salient facts recited by the state. Relevant to this case, the plea court then asked Flenoy:

> Plea Court:   And from what I understand of what [trial counsel] has said, that there may be a self-defense argument that -- that might be made. Do you understand if you enter a plea of guilty here, you give up any rights that you have to bring this argu -- you know, to say, "I'm not guilty because I was acting in self-defense?" Do you understand that's out the window?
>
> Flenoy:       Yes.
>
> Plea Court:   And do you understand if you think you have any mental problems that caused you to do this, that's out the window?[1] Do you understand that?
>
> Flenoy:       Yes, sir.
>
> Plea Court:   That any defenses you have would have to be presented at trial. Do you understand that?

---

[1]Flenoy had earlier explained during the guilty plea hearing that she had been raped in the sixth grade, approximately 7 years earlier, and had sought counseling afterwards that helped her "a little bit."

4

Flenoy:     Yes.

Plea Court:   By entering a plea of guilty here, you give up any rights that you have to say, "Hey, I did this because I thought he was going to kill me," or "I thought he was going to hurt me," or "I thought he was going to rape me." Do you understand that?

Flenoy:     Yes.

Plea Court:   Is that -- do you need more time to talk to your lawyer about this?

Flenoy:     No.

Plea Court:   Is that what you want to do, is give up those rights and enter a plea of guilty here today?

Flenoy:     Yes, sir. . . . I want to take full responsibility because, yes, I did it, but I made -- I made a real mistake and I wish I could have did something different, but yes.

Earlier in the guilty plea hearing, before the state's recitation of the evidence, the plea court had asked Flenoy to confirm her understanding of the rights she was relinquishing by pleading guilty. Flenoy confirmed that she understood that the state would be required to present evidence of her guilt beyond a reasonable doubt as to which all twelve jurors would have to agree. In addition, the plea court had Flenoy confirm that she had had plenty of time to talk to her trial counsel; that trial counsel had answered all of her questions; that she had told trial counsel every fact that she felt was important with regard to what happened; that trial counsel had done everything Flenoy had asked of her, and had not failed or refused to do anything asked of her; that she did not need more time to talk with trial counsel; and that she had no complaint or criticism about anything trial

5

counsel did or did not do, and was satisfied with trial counsel's representation. The plea court also specifically asked:

> Plea Court: Have you understood what [trial counsel] has told you when she's talking to you about your case?
>
> Flenoy: Yes.
>
> Plea Court: If you didn't understand what she told you, did -- did you ask her to explain it?
>
> Flenoy: Yes.
>
> Plea Court: And did she do that?
>
> Flenoy: Yes.

Flenoy then entered her guilty pleas to each of the charges. The pleas were accepted by the plea court, and the matter was scheduled for sentencing.

At the sentencing hearing on January 21, 2011, Flenoy presented the testimony of Dr. Marilyn Hutchinson who testified about Flenoy's traumatic upbringing, including several incidents involving rape or sexual assault. Dr. Hutchinson explained that Flenoy had a gun with her at the time of the victim's murder because she had otherwise been threatened by someone who lived in her apartment complex. Dr. Hutchinson opined that at the time Flenoy killed the victim, she was having "flashbacks and emotional reactivity to the previous rapes." Dr. Hutchinson testified that when the victim made it clear he wanted to have sex with her whether Flenoy wanted to or not, that prompted Flenoy "to determine to protect herself." Dr. Hutchinson diagnosed Flenoy with major depression (recurrent severe), generalized anxiety, posttraumatic stress disorder, and a personality

6

disorder with traits of depressive, borderline, schizotypal, dependent paranoid and antisocial disorders that could dissipate over time.

Flenoy's trial counsel reminded the sentencing court that Flenoy "pled guilty and opted to forego presenting a -- self defense claim to a jury because we have discussed, you know, the -- the legal standards of self-defense. But she and I are asking this Court to consider all of the circumstances, and the totality of the circumstances, her state of mind, in mitigation of -- of this crime." Flenoy's trial counsel asked for a sentence of ten years on the second degree murder charge, or alternatively, for five-year's probation on the second degree murder charge and three year's incarceration on the armed criminal action charge to permit Flenoy to secure treatment while incarcerated. The state sought the imposition of a life sentence on the second degree murder charge, of a thirty year sentence on the armed criminal action charge, and sentences of seven years each on the stealing charges.

The sentencing court imposed sentences of twenty-five years on the second degree murder charge, twenty-years on the armed criminal action count, and five years on each of the two stealing counts, with all sentences to run concurrently. Though Flenoy became very emotional and began crying, she nonetheless confirmed that she had no complaints with her trial counsel's representation of her; that trial counsel had done all that had been asked of her; and had not done anything that Flenoy did not want done.

Flenoy timely filed a Rule 24.035 motion asserting several claims of ineffective assistance of counsel. Appointed counsel then timely filed an amended motion ("Motion"). The Motion asserted numerous claims of ineffective assistance of counsel.

Following an evidentiary hearing, all were denied by the motion court. This timely appeal follows.

## Standard of Review

Appellate review of a motion court's denial of a Rule 24.035 motion is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(k). The movant bears the burden of establishing clear error, as we presume the motion court's findings are correct. *Baumruk v. State*, 364 S.W.3d 518, 525 (Mo. banc 2012). "The [motion] court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression a mistake has been made." *Scott v. Scott*, 414 S.W.3d 57, 60 (Mo. App. W.D. 2013) (citation omitted).

## Analysis

Flenoy raises a single point on appeal. She claims that her trial counsel's performance was ineffective because trial counsel "failed to advise Ms. Flenoy adequately of the elements and burdens of proof of self-defense as applied to the facts of her case." Flenoy claims this was prejudicial to her because "but for her mistaken understanding of the law of self-defense as applied to her case, she would not have chosen to plead guilty."

Before addressing the merits of Flenoy's single issue on appeal, we must determine whether we have the power to do so. Rule 24.035 requires a movant to "include every claim known to the movant for vacating, setting aside, or correcting the judgment or sentence," and requires the movant to acknowledge "the movant's

8

understanding that the movant ***waives any claim for relief known to the movant that is not listed in the motion***." Rule 24.035(d) (emphasis added). Rule 24.035 also sets forth express timeframes within which claims for relief must be filed, with complete waiver as the penalty imposed for any untimely filed claims. Rule 24.035(b), (g); *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012) ("By failing to timely file, the movant has completely waived his right to proceed on his post-conviction relief claims."). Finally, Rule 24.035 restricts the authorized scope of appellate review "to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 24.035(k); *see also Dobbins v. State*, 187 S.W.3d 865, 866 (Mo. banc 2006). These Rules combine to prohibit appellate review of any claim of ineffective assistance of counsel that is not timely raised in a Rule 24.035 motion. *State v. Kelley*, 953 S.W.2d 73, 92 (Mo. App. S.D. 1997) (*cert. denied*, 522 U.S. 1151) (holding that a ground for relief not pled in a motion for post-conviction relief is waived and cannot be raised on appeal); *Johnson v. State*, 921 S.W.2d 48, 50 (Mo. App. 1996) (holding that claims not raised in a timely post-conviction motion are waived). Moreover, a claim for relief not raised in a timely filed Rule 24.035 motion is not preserved for appellate review merely because a motion court accepts evidence and makes findings of fact and conclusions of law regarding the waived claim, as a motion court only has the authority to decide claims that have been timely asserted in a post-conviction motion. *Stanley v. State,* 420 S.W.3d 532, 540 n.5 (Mo. banc 2014) (holding that a motion court is compelled to dismiss late filed claims); *Dorris*, 360 S.W.3d at 268 ("It is the court's duty to enforce the mandatory time limits and the resulting complete waiver in the post-conviction rules."). Waived post-

9

conviction claims are not eligible for plain error review. *Hoskins v. State*, 329 S.W.3d 695, 699 (Mo. banc 2010).

Here, Flenoy's Motion asserted numerous claims, only one of which bears a resemblance to the claim raised on appeal. In her Motion, Flenoy asserted that trial counsel failed to "***accurately*** explain or consider the law as it applied to Movant's case." (Emphasis added.) In describing the facts supporting this claim, Flenoy's motion stated that "[t]rial counsel failed to consider or ***accurately*** advise Movant concerning her claim[] of self-defense . . . . Moreover, trial counsel failed to accurately explain the burden of proof and who bears the burden of proof as it pertains to a self-defense claim. . . ." (Emphasis added.)

During the evidentiary hearing on her Motion, Flenoy testified that she believed that she had to have been raped or hurt to be eligible to assert a claim of self-defense. Although her testimony is not entirely clear, Flenoy implies that her belief about the law of self-defense was based on inaccurate information relayed to her by trial counsel. Trial counsel testified, however, that she did not tell Flenoy that she had to be touched or hurt or injured in order to claim self-defense. Trial counsel also testified that Flenoy had no duty to retreat in order to claim self-defense. Trial counsel testified that she believed she had taken a copy of the self-defense statute with her to show to Flenoy during one of their visits, and that in any case, she knows that she discussed the requirements of the statute with Flenoy. Trial counsel testified that she would have discussed with Flenoy that the state had the obligation to disprove self-defense once injected as an issue at trial. Trial counsel testified that she explained to Flenoy, however, that she was concerned that a

Platte County jury would not be persuaded by Flenoy's claim of self-defense given all of the evidence in the case, and that Flenoy risked the prospect of a first-degree murder conviction.

In its judgment, the motion court held the following relating to Flenoy's claim that trial counsel "inaccurately" advised her on the law of self-defense:

> "Movant's first claim . . . [] that trial counsel was ineffective because she did not ***accurately*** explain or consider the law as it applied to movant's case, is refuted by the record and also testimony from movant's trial counsel at the hearing.

(Emphasis added.) The motion court's judgment itemized 11 different responses provided by Flenoy to questions during the guilty plea hearing or the sentencing hearing verifying her satisfaction with counsel, her awareness that she was giving up any self-defense claim and her understanding about what that meant, and that she was giving up her rights at trial which included the right to require the state to prove her guilt beyond a reasonable doubt. The judgment also found that trial counsel testified at the evidentiary hearing that "she spoke at length with movant about her potential defenses, [and] the burden of proof." The judgment concluded that trial counsel:

> was not ineffective in her representation of movant regarding her advising movant during the guilty plea. [Trial] counsel provided ***accurate*** and proper legal assistance when she advised movant of the consequences of her pleading guilty and that she would be giving up many of her rights by pleading guilty.

(Emphasis added.) The judgment further found that "[n]othing in the record before the court indicates that movant's plea was not voluntary, intelligently or knowingly made. . . . Movant also suffered no prejudice from [trial] counsel's complained of actions.

11

Flenoy's motion claimed that trial counsel did not ***accurately*** explain the law of self-defense to Flenoy--in other words, that trial counsel affirmatively misinformed Flenoy about the legal requirements of self-defense. The motion court rejected this claim, finding trial counsel's contrary testimony to be credible. "Determinations concerning credibility are exclusively for the motion court and it is free to believe or disbelieve any evidence, whether contradicted or undisputed." *Barnes v. State*, 385 S.W.3d 517, 522 (Mo. App. S.D. 2012). On appeal, Flenoy raises a different claim. She now argues that trial counsel did not ***adequately*** advise Flenoy about the law of self-defense. Flenoy now complains that she pled guilty:

> under a mistaken and inadequate understanding of the law of self-defense as applied to the facts of her case because of [trial] counsel's inadequate explanation. [Trial] counsel was aware or should reasonably have been aware of [Flenoy's] young age, lack of legal knowledge, and intellectual limitations. . . . [Trial] counsel . . . failed to ensure . . . that [Flenoy] clearly understood that under Missouri law, she could act in lawful self-defense even if she had not been raped or injured, or even if she failed to retreat.

[Appellant's Brief, p. 19] Plainly, Flenoy's claim for relief is no longer that trial counsel ***inaccurately*** explained the law of self-defense, but instead that trial counsel accurately explained the law of self-defense but "knew or should have known that due to [Flenoy's] youth, mental health issues and vocabulary issues, it was crucial to ascertain [Flenoy's] understanding of self-defense before she pled guilty." [Appellant's Brief, p. 21] In effect, Flenoy now claims that trial counsel owed a heightened duty to ensure that Flenoy understood the accurate advice she was given about the law of self-defense.

Plainly, an allegation that a movant was inaccurately advised by trial counsel about the law is materially different from an allegation that trial counsel should have

12

known that a movant did not understand accurate advice about the law. The claim asserted by Flenoy on appeal was not asserted in her Motion. Nor was it determined by the motion court. The claim asserted on appeal is waived, and cannot be reviewed by this court. *Gilyard v. State*, 303 S.W.3d 211, 214-15 (Mo. App. W.D. 2010).

## Conclusion

Because Flenoy's claim on appeal was not asserted in her Motion, and was not determined by the motion court, the claim has been waived and is not subject to appellate review. The trial court's judgment denying Flenoy's motion is affirmed.

Cynthia L. Martin
_____
Cynthia L. Martin, Judge

All concur