

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| THOMAS E. SIMMONS, | ) |
| | ) |
| Appellant, | ) |
| | ) WD77246 |
| v. | ) |
| | ) OPINION FILED: |
| | ) April 28, 2015 |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable J. Dale Youngs, Judge

### Before Division III:  Mark D. Pfeiffer, Presiding Judge, and
Gary D. Witt and Anthony Rex Gabbert, Judges

Thomas Simmons ("Simmons") appeals the judgment of the Circuit Court of Jackson County, Missouri ("motion court"), denying, after an evidentiary hearing, his motion for post-conviction relief pursuant to Rule 24.035.  On appeal, Simmons claims that the motion court clearly erred in refusing to grant his motion because his guilty pleas were not knowingly and intelligently entered.  We affirm.

### Factual and Procedural Background

In April of 2009, Simmons was charged with six different offenses in connection with a string of burglaries and property theft incidents occurring in the Kansas City metropolitan area.

While Simmons's case was pending, he made numerous attempts to contact, among others, potential witnesses who were scheduled to testify against him. As a result, the State filed an amended information charging Simmons with an additional two counts of tampering with a witness or with a crime victim.

On the day Simmons's criminal trial was to begin, Simmons and the State reached a plea agreement. Pursuant to the plea agreement, Simmons agreed to enter an *Alford*[1] plea to four class C felonies: stealing, tampering in the first degree, and two counts of receiving stolen property. In return, the State agreed to drop the other four charges against Simmons and to recommend a sentence not to exceed eight years (concurrent) on all of the charges to which Simmons pled guilty.

At the plea hearing, the State identified the evidence that it intended to produce at Simmons's criminal trial, some of which the State had obtained pursuant to having placed a GPS unit on the bottom of an automobile that Simmons drove in order to track Simmons's movements. At the time of the plea, the plea court and all of the parties, including Simmons himself, were aware that another case wherein a GPS unit had been attached to a criminal suspect's car (*United States v. Jones*, 132 S.Ct. 945 (2012)) was pending before the United States Supreme Court. The uncertainty in the law regarding whether the State's placement of the GPS unit on Simmons's car constituted a warrantless search of Simmons for Fourth Amendment purposes served as a motivating factor behind the State's plea offer and Simmons's acceptance of the plea offer.

During the plea court's questioning of Simmons to ensure that Simmons understood the consequences of his guilty plea, the plea court and Simmons discussed the Fourth Amendment issues in particular:

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

2

Q:  (By the court) And the Court of Appeals or even the Supreme Court might hear your case and the issues that have come up already in this case including the suppression issues that we have been talking about and if you were convicted evidence that might have come up and come in during the course of the trial; and they would have all kinds of options available to them including reversing your conviction or sending it back to me for a new trial.  All of these options would be available [if Simmons did not plead guilty but went to trial].

The bottom line is do you understand you would have a right to appeal any conviction?

A:  Right.

Q:  And . . . your attorney in this case has already filed several motions.  We have had a number of days of hearings on various motions to suppress evidence and to keep out certain kinds of evidence.  And your lawyer on your behalf has the right to assert any of these defenses that you have, and I might agree at some point during the course of the case to go his way on some of those.  I might agree to limit the State's ability to offer and admit evidence against you.  Do you understand you have all of these rights for him to do this on your behalf?

A:  Right.  Can I ask you a question?

Q:  Yes, sir.

A:  In the event that the Supreme Court came back on the GPS issue do I have a right to still file on that?

Q:  My position would be you should go forward today assuming any defenses you have to any of the charges against you, any of the rulings I have made in this court on any of the issues including that one, that you are forever giving up your right to assert those defenses or request those defenses be found in your favor again.  Do you understand that?

A:  I'm giving up these rights?

Q:  I believe the answer to that is yes.  So what I'm saying is I don't know what the Supreme Court will do with the issue that we have been talking an awful lot about.

You have the right to assert that as a defense to the evidence that's been offered and would be offered by the State against you.  And we have heard that, and I have ruled on that.  My position is and I think you should go forward assuming that if you plead guilty today pursuant to your rights under Alford, in other words, if you enter an Alford plea today and we go forward, you are forever giving up the right to assert that defense no matter what the Supreme Court does down the road.

3

Okay? Do you need to talk to your lawyer about that a little bit before we go forward?

A: Yeah, I—

Q: In other words, what I'm saying is you can't take it both ways.

A: That's why you take the Alford plea, because you can still appeal. That's what I understand.

Q: No sir. You need to talk to your lawyer. The only difference between an Alford plea and a regular plea of guilty is you are not admitting your guilt in an Alford plea. Everything else is exactly the same in terms of the rights that you are giving up that are afforded to you under the Constitution. It doesn't matter if it is an Alford plea or a straight-up guilty plea, you are giving up these rights.

A: So you are saying the police can just go throw GPS on your car without warrants and everything and they can still just get away with that?

Q: All I'm telling you is if you plead today pursuant to your rights under Alford and I accept your plea under Alford you are giving up your right to assert any defenses you have to the charges against you, including your claim that any of the evidence was unlawfully obtained. Okay? That's what I'm telling you.
Do you need to talk to your lawyer a little bit before we go forward to make sure you are square on this?

A: No. Go ahead.

After the court became satisfied that Simmons understood the rights he was giving up by entering the *Alford* plea, including any right to pursue the suppression issue, the questioning proceeded to the State's expected evidence and the reasoning behind Simmons's choice in entering the plea:

Q: Mr. Simmons, it is fair to say you dispute those facts. Is that fair?

A: Yes.

Q: It is my understanding nevertheless that you nevertheless agree to plead guilty in this case based on your belief that you would receive a greater sentence if you stood trial and were convicted than you are going to receive through the plea agreement. Is that fair to say?

A: Yep.

4

. . . .

Q: Okay. You believe it is in your best interest to get this over with and plead guilty today pursuant to your rights under Alford?

A: Yes.

The plea court accepted Simmons's *Alford* plea. Between Simmons's plea hearing and his sentencing hearing, the United States Supreme Court decided *Jones*, 132 S.Ct. 945. In *Jones*, the Court held: that the government's act of physically placing a GPS tracking device on a criminal suspect's car and then using the information obtained from the device constituted a search under the Fourth Amendment; that since the search had not been conducted pursuant to a valid warrant, no exception to the warrant requirement existed; and that since the evidence obtained from the search was essential to the government's case against Jones, his conviction was overturned. *Id*. at 949.

Simmons filed a motion to withdraw his guilty plea due to the intervening *Jones* decision. His counsel argued that Simmons "was not fully aware of what he was sacrificing at the time of his plea." The plea court denied Simmons's motion and sentenced Simmons to eight years on each count to which Simmons pled guilty, such sentences to run concurrently.

Simmons timely filed a motion for post-conviction relief under Rule 24.035. Motion counsel filed an amended motion alleging, *inter alia*, that Simmons's *Alford* plea was not voluntary and intelligent. The motion court, which was also the plea court, denied Simmons's motion, and Simmons appeals on this same basis.

**Standard of Review**

We review the motion court's findings and conclusions denying a motion under Rule 24.035 to determine only whether they are clearly erroneous. Rule 24.035(k); *Day v. State*,

5

770 S.W.2d 692, 695 (Mo. banc 1989). "The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, [we are] left with a definite and firm impression that a mistake has been made." *Neal v. State*, 379 S.W.3d 209, 214 (Mo. App. W.D. 2012) (internal quotation omitted). "The movant bears the burden of establishing clear error, as we presume the motion court's findings are correct." *Flenoy v. State*, 446 S.W.3d 297, 301 (Mo. App. W.D. 2014).

### Analysis

On appeal, Simmons alleges only that the motion court clearly erred in finding that his guilty pleas were voluntarily and intelligently entered. "[A] guilty plea must be a voluntary expression of the defendant's choice, and a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Neal*, 379 S.W.3d at 215 (internal quotation omitted). "[T]he court [must] be convinced that the defendant understands the specific charges and the maximum penalty confronting him and that the defendant recognizes that by pleading guilty, he waives a number of legal rights." *Steinle v. State*, 861 S.W.2d 141, 143 (Mo. App. W.D. 1993). "Because the defendant is waiving well established rights and subjecting himself to penalty, the record must reflect that the defendant understood the consequences of his plea and consciously waived the rights articulated by" Rule 24. *Id.*

In this case, the record reflects that the motion court did not clearly err in finding that Simmons understood the rights he was giving up by entering his *Alford* plea. First of all, Simmons testified that he had gone "all the way" in school, having obtained his GED and gone to college. Second, the plea court carefully went through the rights that Simmons would be giving up by entering his plea including his rights to: a jury trial; representation by counsel; the presumption of innocence; hold the State to its burden of proving him guilty beyond a reasonable

6

doubt; cross-examine the State's witnesses and call his own witnesses, which could be subpoenaed by the court; testify on his own behalf or choose not to testify without his choice being held against him; a unanimous jury for conviction; and appeal to a higher court upon conviction. Simmons stated that he understood that he was giving up all of these rights.

And although Simmons unquestionably exhibited some initial confusion as to whether the entry of an *Alford* plea would allow him to preserve his suppression issue should the United States Supreme Court find in favor of his position in the factually similar case pending before it, the plea court was thorough in dispelling Simmons of any notions that this issue would be preserved or otherwise have any impact on his plea. As the dialogue from the plea hearing noted above illustrates, the plea court expressly told Simmons that, in entering the *Alford* plea, which had the same consequences as any other guilty plea, he was "forever giving up the right to assert [the Fourth Amendment] defense no matter what the Supreme Court does down the road." The plea court further explained that if it accepted Simmons's plea under *Alford*, Simmons was "giving up [his] right to assert any defenses [he had] to the charges against [him], including [his] claim that any of the evidence was unlawfully obtained." The plea court gave Simmons an opportunity to discuss this further with his plea counsel, which Simmons declined to do. Finally, the plea court reiterated one final time that:

> Q: You are giving up any claim to being prejudiced by all of these issues. If we go forward and I accept your Alford plea today and we get on down the road these are issues that will not be available to you down the road. Do you understand that?
>
> A: All right. Yeah. I understand.

This is a clear and unequivocal expression by Simmons establishing that he understood all of the consequences of his *Alford* plea.

7

Of course, for a guilty plea, even an *Alford* plea, to be valid, not only does the defendant have to understand the consequences of the plea, but there must be a factual basis for the plea. *Alford*, 400 U.S. at 38. However, "as long as the basis exists on the record as a whole, the factual basis [for the guilty plea] need not be established by the defendant's words or by an admission of the facts recited by the State." *Roussel v. State*, 314 S.W.3d 398, 401 (Mo. App. S.D. 2010) (internal quotation omitted). In this case, the State set forth the evidence it intended to produce at Simmons's trial, which provided a sufficient factual basis for Simmons's guilty pleas. Although Simmons argues here that the evidence put forth by the State should have been suppressed, the court had *not* suppressed the evidence at the time of the plea, did *not* intend to suppress the evidence at that time, and, as stated above, made sure that Simmons understood that entry of the pleas would forever extinguish his right to argue that the evidence should have been suppressed. Therefore, the evidence was properly considered by the plea court as providing a factual basis for the *Alford* plea, even if some of the evidence had arguably been obtained in violation of Simmons's Fourth Amendment rights.[2]

Finally, Simmons seems to argue that there cannot be a factual basis for the *Alford* plea if the defendant does not subjectively believe that he will be convicted of the charges against him. Although *Alford* pleas are most often entered because a defendant believes that he will be convicted if he goes to trial, Simmons points to no case stating that such a belief on the defendant's part is required. Instead, the requirement is that the defendant "intelligently concludes that his interests require entry of a guilty plea." *Alford*, 400 U.S. at 37. Indeed, any

---

[2] Assuming that the State's action in this case violated Simmons's Fourth Amendment rights, the violation of a defendant's Fourth Amendment rights does not automatically lead to suppression of the evidence obtained as a result of the violation. Suppression is a judicially created remedy to the violation that may or may not be available to the defendant. *See Davis v. United States*, 131 S.Ct. 2419, 2431 (2011) (holding that it does not necessarily follow from the Court's finding of a Fourth Amendment violation that the defendant will gain relief—"[r]emedy is a separate, analytically distinct issue"). Here, Simmons is not entitled to the remedy of suppression because he expressly waived that remedy by pleading guilty.

number of "reasons other than the fact that he is guilty may induce a defendant to so plead and he must be permitted to judge for himself in this respect." *Id.* at 33 (internal quotation and alteration omitted). In this case, it was not Simmons's subjective belief that he would be convicted if he faced trial that induced him to plead guilty. Rather, it was his awareness that, in the (even unlikely) event that he would be convicted, he faced a possible punishment greatly exceeding the punishment he was able to obtain by entering the plea agreement. Simmons's rationale is established in the following exchange:

> Q: Okay. Because you dispute all the facts and you are convinced if you were to try this case your position is you would be acquitted?
>
> A: I would think I would be.
>
> Q: But if you were not and if you were convicted—
>
> A: I think you would do whatever you think you could do. That's my problem.
>
> Q: —you would be sentenced to a far greater sentence than eight years in the penitentiary, which again is the lid in this case. You understand you could be sentenced to less than that, but you understand that if we were to go to trial and you were convicted that your sentence would be greater?
>
> A: Yes.
>
> Q: Okay. You believe it is in your best interest to get this over with and plead guilty today pursuant to your rights under Alford?
>
> A: Yes.

This rationale, when considered along with the evidence that the State intended to introduce at trial, the plea court's stated intention to allow the State's evidence, and the very real possibility that the Supreme Court could have found against Simmons's interests in the then-pending *Jones* case, is not unreasonable. That, in hindsight, Simmons may have made a bad bargain does not render his guilty pleas involuntary.

9

The motion court did not clearly err in denying Simmons's Rule 24.035 motion. Accordingly, Simmons's point on appeal is denied.

**Conclusion**

For all of the above-stated reasons, we affirm the judgment of the motion court.


_____
Mark D. Pfeiffer, Presiding Judge

Gary D. Witt and Anthony Rex Gabbert, Judges, concur.