Richard A. WAGONER,
Movant–Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 27603.

Missouri Court of Appeals,
Southern District,
Division Two.

July 11, 2007.

Application for Transfer to Supreme Court
Denied Aug. 2, 2007.

Bryan Dale Scheiderer, Rolla, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie L. Wan, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

Richard A. Wagoner (Wagoner) appeals from an order denying his amended Rule 24.035 motion to set aside or vacate his judgment and sentence for child molestation in the first degree. *See* § 566.067.[1] The motion alleged, *inter alia,* that Wagoner's guilty plea was involuntary because: (1) plea counsel was ineffective for failing to contact a witness who would have refuted the account of events given by the child victim and her mother; and (2) the record contained an insufficient factual basis to establish the mental element required to commit the crime of child molestation in the first degree. Following an evidentiary hearing, the motion court denied relief. We affirm.

## I. Factual and Procedural Background

On February 25, 2004, a complaint was filed against Wagoner in the Circuit Court of Phelps County, Missouri. The complaint alleged that Wagoner had committed statutory sodomy and child molestation in the first degree. *See* §§ 566.062, 566.067. These crimes, which involved a four-year-old female named C.L.M. (Victim), allegedly occurred between December 15, 2003 and February 23, 2004. A warrant was issued for Wagoner's arrest.

Wagoner was quickly taken into custody and incarcerated in the Phelps County Jail. He had obtained his G.E.D. and could read and write. On February 27, 2004, he voluntarily wrote and signed a letter to Victim apologizing for having "sexual contact" with her. Wagoner wrote another letter to Victim's mother, A.M., in which he stated: "life really began for me when

---

1. All references to rules are to Missouri Court Rules (2007). All references to statutes are to RSMo (2000) unless otherwise stated.

both of you accepted me into your life, gave me your love and friendship and all you ask in return was the same. I know I destroyed all of that. There is no forgiveness for what I have done." This last statement referred to what Wagoner had done to Victim.[2]

Chad Picker (Picker) was the public defender appointed to represent Wagoner. Wagoner and A.M. had both worked at the Denny's restaurant in Rolla, Missouri. In correspondence, Wagoner asked Picker to contact several persons, including Christina Lohrer (Lohrer), who worked at the restaurant. Wagoner wanted these persons interviewed because they "may have overheard statements by [A.M.] that may have contradicted certain things [A.M.] had told police officers[.]" Wagoner also revealed that he had described what had happened with the Victim to all of these persons. Picker decided that interviewing them would not be helpful to Wagoner's defense because Picker could not "put witnesses on the stand at a trial where [Wagoner] confessed to allowing [Victim] to touch his penis." In one of Wagoner's letters, he also expressed concerns that what he had done did not constitute sodomy. On April 30, 2004, Picker responded by sending Wagoner a letter containing copies of the sodomy statute (§ 566.062), the child molestation statute (§ 566.067) and the definition of sexual contact (§ 566.010).[3]

On May 19, 2004, Wagoner waived his preliminary hearing. During a meeting with Picker, Wagoner received copies of the discovery obtained from the State. Included in this packet of information was a transcript of Victim's videotaped interview and what Picker described as "multiple confessions from the police report and [Wagoner's] letter of apology." On May 26, 2004, the prosecutor filed a two-count information against Wagoner. Count I alleged that, in violation of § 566.067, Wagoner committed child molestation in the first degree by subjecting Victim to sexual contact when she was less than 14 years old. Count II alleged that, in violation of § 566.062, Wagoner committed statutory sodomy in the first degree by having deviate sexual intercourse with Victim when she was less than 12 years old. The prosecutor offered a plea bargain to Wagoner. If he would plead guilty to the child molestation charge, the State would recommend a 12-year sentence in the Department of Corrections (DOC) to run concurrently with another sentence Wagoner was already serving. In addition, the State would dismiss the statutory sodomy charge. Picker discussed the offer with Wagoner and recommended that he accept it because of the confessions he had made. Wagoner agreed to do so.

On June 7, 2004, Picker met with Wagoner for 20–30 minutes to discuss the guilty plea process and the collateral consequences of the plea. Picker prepared a petition to plead guilty, which Wagoner reviewed and signed. The fifth paragraph of that document stated:

I know the Court must be satisfied that there is a factual basis for a PLEA OF GUILTY before my plea can be accepted. I represent to the Court that I did

---

2. At the motion hearing, the letters to Victim and A.M. were admitted in evidence as Respondent's Exhibits 1 and 2, respectively. Wagoner has failed to deposit these exhibits with this Court. Therefore, the intendment and content of these exhibits will be taken as favorable to the trial court's ruling and unfavorable to Wagoner. *O'Bernier v. R.C. & As-* *sociates, Inc.,* 47 S.W.3d 422, 423 (Mo.App. 2001); *Smith v. Associated Natural Gas Co.,* 7 S.W.3d 530, 535 (Mo.App.1999); *State v. Creech,* 983 S.W.2d 169, 171 (Mo.App.1998).

3. All references to § 566.010 are to RSMo Cum.Supp. (2003).

the following acts in connection with the charge made against me: *I let [Victim], who is less than 14 years old, touch my penis until I secreted seminal fluid.* (Emphasis in original.) Because Wagoner was pleading guilty to a sex crime, Picker also discussed the Missouri Sex Offenders Program at the DOC, the sexually violent predator laws and the civil commitment process.

On June 10, 2004, Wagoner appeared for his guilty plea hearing. During an examination by the court, Wagoner agreed that: (1) Picker did everything he was asked to do by Wagoner; (2) they spent enough time together to discuss all possible defenses; and (3) they reviewed the petition to plead guilty, and Wagoner had no questions about it. The following examination then took place:

BY THE COURT

Q. Count 1 alleges that you committed the Class B felony of child molestation in the first degree and that between December 15th, 2003 and February 23rd, 2004 in Phelps County, Missouri, you subjected [Victim], who was then less than 14 years old, to sexual contact. Do you understand that charge?

A. Yes, sir.

. . . .

Q. Do you have any questions about the charge?

A. No, sir.

Q. Did you, in fact, do the things complained of in Count 1? Did you subject this child who was less than 14 years old at the time to sexual contact?

A. Yes, sir.

During further examination by Picker, Wagoner identified the petition to plead guilty. He acknowledged that: (1) Picker had read each paragraph of that document to Wagoner; (2) he understood all of the rights discussed therein; (3) he signed the document; and (4) he wished to plead guilty. Picker then filed the plea petition with the court. During cross-examination by the prosecutor, Wagoner was asked to explain what he did that constituted sexual contact. During that explanation, Wagoner admitted that: (1) Victim grabbed hold of Wagoner's penis in a sexual manner; (2) he developed an erection; (3) Victim continued to grip Wagoner's penis for five to six seconds; and (4) as he was pulling back, "semen or something came out."

The court accepted Wagoner's guilty plea, sentenced him to serve 12 years in the DOC on the child molestation charge and dismissed the statutory sodomy charge. During further examination by the plea court, Wagoner stated that he had no complaints about Picker's service and did not believe his attorney had been ineffective or incompetent.

After Wagoner was delivered to the DOC, he filed a timely *pro se* Rule 24.035 motion. Counsel was appointed, and an amended motion was filed. Insofar as relevant here, the motion alleged that Wagoner's guilty plea was involuntary for two reasons. First, Picker was ineffective for failing to contact Lohrer because she "would have refuted the victim's and victim's mother's claim of the events that occurred[.]" Second, the record contained an insufficient factual basis to establish the mental element required to commit the crime of child molestation in the first degree.

In October 2005, the motion court held an evidentiary hearing on Wagoner's claim. He, Picker and Lohrer testified. The facts already recited above have been drawn from the testimony of Wagoner and Picker and from various documents in the legal file. Lohrer testified that she had worked with Wagoner and A.M. at Den-

ny's. After Wagoner was arrested, A.M. was confused and upset. When asked if A.M. said anything that would cast doubt on Wagoner's guilt, Lohrer answered, "It's been awhile." Lohrer then was asked if she had heard Victim make any statements. Lohrer recounted that, at dinner one evening, Victim whispered in Lohrer's ear that "my mommy said I had touched [Wagoner's] thingee...." Lohrer didn't react to the statement or make an issue out of it because she "didn't know what to do." Because Victim was so young, Lohrer did not want to scare her. Later that evening, Lohrer and A.M. talked more about what had happened. Lohrer asked Victim if Wagoner had touched her. Victim said "yes" and "just looked down." At that point, Lohrer and A.M. took Victim to the hospital so a complete investigation could be performed. Lohrer was not asked whether Wagoner had ever discussed with her what had transpired with Victim.

The motion court denied Wagoner's motion. The court found that Picker had not been ineffective for failing to contact Lohrer because, in Wagoner's discussions with his co-workers, he "basically confessed the crime with which he was charged. [Picker] made the tactical decision not to use these witnesses to avoid putting on additional witnesses to whom [Wagoner] had confessed." The court also found that the record at the guilty plea hearing contained a sufficient factual basis as to the necessary mental element because "[e]vidence was presented that sexual contact occurred and that a physical reaction occurred from which an inference of sexual gratification can be made." This appeal followed.

## II.  Standard of Review

Appellate review of an order overruling a Rule 24.035 motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Mendez v. State*, 180 S.W.3d 75, 79 (Mo.App.2005). We presume the motion court's findings and conclusions are correct. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991). Findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. Id. Wagoner bore the burden of proving the grounds asserted for post-conviction relief by a preponderance of the evidence. Rule 24.035(i); *Harris v. State*, 184 S.W.3d 205, 209 (Mo.App.2006). The motion court was free to believe or disbelieve any evidence, whether contradicted or undisputed. *Krider v. State*, 44 S.W.3d 850, 858 (Mo. App.2001). This Court defers to the motion court on matters of credibility. Id.; *Henderson v. State*, 32 S.W.3d 769, 770 (Mo.App.2000).

## III.  Discussion and Decision

■ In Wagoner's first point, he contends that his guilty plea was involuntary and unknowing due to ineffective assistance of counsel because Picker failed to conduct a thorough investigation. Specifically, Wagoner argues that Picker should have interviewed Lohrer because she would have provided exculpatory evidence.

■ Since Wagoner pled guilty, a claim of ineffective assistance of counsel is immaterial except to the extent that it infringed upon the voluntariness and knowledge with which the guilty plea was made. *Hagan v. State*, 836 S.W.2d 459, 463 (Mo. banc 1992); *Cook v. State*, 193 S.W.3d 378, 382 (Mo.App.2006). To prevail on a claim of ineffective assistance of counsel, Wagoner had to prove that Picker failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar cir-

cumstances and that Wagoner was thereby prejudiced. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Harris v. State,* 184 S.W.3d 205, 209 (Mo.App.2006). "In the context of a guilty plea, a movant establishes prejudice due to ineffective assistance of counsel by demonstrating that a reasonable probability exists that, but for plea counsel's errors, the movant would not have entered a guilty plea and would have insisted on proceeding to trial." *Copas v. State,* 15 S.W.3d 49, 54 (Mo.App. 2000); *State v. Nunley,* 980 S.W.2d 290, 292 (Mo. banc 1998).

We begin our review with a strong presumption that Picker's conduct under the circumstances was reasonable. *Bequette v. State,* 161 S.W.3d 905, 907 (Mo.App.2005). To overcome this presumption, Wagoner had to prove a grave dereliction of duty by Picker that substantially affected Wagoner's rights. *Fisher v. State,* 192 S.W.3d 551, 555 (Mo.App.2006). In the case at bar, the issue is whether Picker made a reasonable decision under the circumstances that it was unnecessary to interview Lohrer. *See id.; Crooks v. State,* 131 S.W.3d 407, 410 (Mo.App.2004). We give great deference to counsel's judgment on this question. *Crooks,* 131 S.W.3d at 410; *Chaney v. State,* 73 S.W.3d 843, 847 (Mo. App.2002). At the motion hearing, Picker testified that Wagoner "actually went and talked to the ladies at Denny's about what happened . . . ." Picker's testimony on this point was uncontradicted.[4] He decided not to interview Lohrer because he could not put on a witness to whom Wagoner had "confessed to allowing [Victim] to touch his penis." The motion court concluded that Picker's decision not to interview Lohrer was reasonable because counsel made the tactical decision not to use witnesses to whom Wagoner had "basically confessed the crime with which he was charged." For two reasons, this conclusion is not clearly erroneous.

First, "[i]t is settled law that trial strategy decisions are virtually unchallengeable and rarely furnish a ground for finding ineffective assistance of counsel. This includes trial counsel's strategic decisions concerning the selection of the witnesses and evidence that will be presented on a defendant's behalf." *Marschke v. State,* 185 S.W.3d 295, 304 (Mo.App.2006) (citations omitted). Picker's defense of Wagoner already was hampered by the multiple confessions that he had made to the police, A.M. and Victim. Calling Lohrer as a witness would have injected another confession into the trial with which counsel would have had to contend. "When defense counsel believes a witness' testimony would not unequivocally support [the] client's position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel." *Winfield v. State,* 93 S.W.3d 732, 739 (Mo. banc 2002).

Second, to prevail on a claim that counsel was ineffective for failing to call a witness, Wagoner had to prove that Lohrer's testimony would have produced a viable defense. *Worthington v. State,* 166 S.W.3d 566, 577 (Mo. banc 2005). Wagoner failed to do so. He wanted Picker to interview Lohrer because she may have overheard A.M. make statements at work that were inconsistent with what she had told the police. Wagoner's belief turned out to be completely unfounded because, at the evidentiary hearing, no such statements were adduced from Lohrer. Additionally, Lohrer had talked to Victim about

---

4. It is undisputed that Lohrer was one of the ladies with whom Wagoner worked at Denny's. Additionally, there was no testimony at the evidentiary hearing from either Wagoner or Lohrer denying that they had discussed the facts of what had occurred.

what had happened with Wagoner. Lohrer's account of Victim's statements and actions tended to be incriminating, rather than exculpatory. So was Lohrer's conduct in helping A.M. take Victim to a hospital so a complete investigation could be performed. Picker was not ineffective for failing to further investigate or call a witness who could not be counted on to give testimony favorable to Wagoner. *See Clayton v. State*, 63 S.W.3d 201, 208 (Mo. banc 2001). Point I is denied.

■■■ In Wagoner's second point, he contends that his guilty plea was involuntary and unknowing due to the lack of an adequate factual basis to support the plea. Rule 24.02(e) provides that a trial court "shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." This rule is not constitutionally based. *Myers v. State*, 209 S.W.3d 539, 541 (Mo.App.2006). Instead, "its purpose is to aid in the constitutionally required determination that a defendant enter his or her plea of guilty intelligently and voluntarily." *Price v. State*, 137 S.W.3d 538, 541 (Mo.App.2004). "A defendant need not expressly admit guilt before the court can make a determination as to the factual basis of a plea. The defendant need not admit to or even believe the truth of the charges; it is required only that the plea be made knowingly and voluntarily." *Saffold v. State*, 982 S.W.2d 749, 753 (Mo. App.1998) (citations omitted). Additionally, due process does not require that a defendant be informed of each element of the offense at the plea hearing. *Myers*, 209 S.W.3d at 541. Instead, this information can be, and commonly is, provided to the defendant by his attorney prior to the hearing. Id. An appellate court's focus is on whether the defendant understood the nature of the charge against him and not on whether a particular ritual was followed or every detail was explained. *Huntley v. State*, 204 S.W.3d 668, 673 (Mo.App.2006); *Johnson v. State*, 172 S.W.3d 831, 835 (Mo. App.2005).

As noted above, Wagoner pled guilty to the crime of child molestation in the first degree. *See* § 566.067.1. A person commits this crime "if he or she subjects another person who is less than fourteen years of age to sexual contact." Id. The phrase, "sexual contact," is separately defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" § 566.010(3). Wagoner claims the factual basis for his guilty plea was "incomplete" because he did not acknowledge having sexual contact with Victim for the purpose of arousing or gratifying his sexual desire. This argument is based on statements Wagoner made at the plea hearing that Victim initiated the sexual contact without being asked to do so by Wagoner. The motion court rejected that claim because "[e]vidence was presented that sexual contact occurred and that a physical reaction occurred from which an inference of sexual gratification can be made."

We do not find this ruling to be clearly erroneous. After reviewing the entire record, it is evident that Wagoner understood the nature of the charge against him. Shortly after he was arrested, he wrote a letter to Victim apologizing for having "sexual contact" with her. In late April 2004, Picker sent Wagoner copies of § 566.067 and § 566.010.[5] The former stat-

---

5. In Wagoner's reply brief, he argues there is no proof that he received a copy of § 566.010

because Picker only testified that he thought he sent this statute to Wagoner. We reject

ute recites the elements of the crime of child molestation in the first degree. The latter statute defines sexual contact. Thus, Wagoner was apprised of the elements of the crime and the appropriate definition of sexual contact before deciding to plead guilty. The petition to plead guilty, which he reviewed and signed, stated that "I let [Victim], who is less than 14 years old, touch my penis until I secreted seminal fluid." During questioning by the court at the plea hearing, Wagoner acknowledged that he understood the charge against him and that he did subject Victim to sexual contact. During cross-examination by the prosecutor, Wagoner admitted that: (1) Victim grabbed hold of Wagoner's penis in a sexual manner; (2) he developed an erection; (3) Victim continued to grip Wagoner's penis for five to six seconds; and (4) as he was pulling back, "semen or something came out." Regardless of who initiated the contact, it is evident that Wagoner's admissions during the plea hearing would support the reasonable inference that he permitted the sexual contact to continue long enough for him to become aroused and obtain sexual gratification from it. That is all § 566.067 requires. Because direct proof of the requisite mental state for the crime of child molestation is seldom available, the existence of such intent is usually inferred from circumstantial evidence and the permissible inferences that can be drawn therefrom. *State v. McMeans,* 201 S.W.3d 117, 121 (Mo.App.2006); *State v. Jensen,* 184 S.W.3d 586, 589 (Mo.App.2006). The inferences drawn from the evidence by the motion court were reasonable and were

sufficient to establish a factual basis for Wagoner's guilty plea. Point II is denied.

After reviewing the entire record, we are not left with a definite and firm belief that a mistake has been made. *Wilson v. State,* 813 S.W.2d 833, 835 (Mo. banc 1991); *Mendez v. State,* 180 S.W.3d 75, 79 (Mo. App.2005). Accordingly, we affirm the motion court's order denying post-conviction relief.

BARNEY and LYNCH, JJ., concur.

---

this argument. "A witness is not required to speak with such confidence as to exclude all doubts in his mind; his qualification of his testimony affects only its probative force." *State v. Degraffenreid,* 477 S.W.2d 57, 60 (Mo. banc 1972). Thus, the language used by Picker only affected the potential weight to be

accorded this portion of his testimony. *State v. Brinkley,* 354 Mo. 337, 189 S.W.2d 314, 323 (1945); *State v. Stigall,* 700 S.W.2d 851, 857 (Mo.App.1985); *Leathers v. Sikeston Coca-Cola Bottling Company,* 286 S.W.2d 393, 396–97 (Mo.App.1956).