

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| MATTHEW HENDRIX, | ) |
| | ) |
| Respondent, | ) |
| | )  WD77353 |
| v. | ) |
| | )  OPINION FILED: |
| | )  June 16, 2015 |
| STATE OF MISSOURI, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Sandra C. Midkiff, Judge**

**Before Division III:**  Mark D. Pfeiffer, Presiding Judge, and
Gary D. Witt and Anthony Rex Gabbert, Judges

The State of Missouri appeals the Judgment of the Circuit Court of Jackson County, Missouri ("motion court"), granting Matthew Hendrix's ("Hendrix") amended Rule 24.035[1] motion for post-conviction relief, setting aside the judgment accepting the plea, and vacating the sentence imposed therein.  The State argues that the motion court clearly erred in granting Hendrix's amended motion for post-conviction relief on the grounds that plea counsel was ineffective for failing to investigate a possible mental disease or defect defense.  Because Hendrix presented no evidence at the Rule 24.035 evidentiary hearing as to what the results of

---

[1] Unless otherwise indicated, all rule references are to MISSOURI COURT RULES Vol. I (2014).

the additional investigation he claims should have been done would have demonstrated, he has failed to meet the prejudice prong of the *Strickland*[2] test. Thus, we reverse.

## Factual and Procedural History

Hendrix was charged by the State with one count of murder in the second degree, one count of armed criminal action, and one count of burglary in the first degree. In exchange for his guilty plea, the State agreed to recommend a maximum sentence of twenty-five years for murder in the second degree, a maximum sentence of fifteen years for armed criminal action, and fifteen years for burglary in the first degree, with all sentences running concurrently.

Hendrix entered a guilty plea. At the guilty plea hearing, the plea court reviewed the range of charges with Hendrix, which for murder in the second degree was ten to thirty years or life in prison; for armed criminal action was a minimum of three years with no upper limit; and for burglary in the first degree was five to fifteen years. Hendrix indicated that he understood the ranges of punishment. Hendrix stated that he was eighteen years old; had obtained his GED; and could read, write, and understand English. At the time of the plea, Hendrix had not had any drugs, alcohol, or any prescription medication in the last two days.

Hendrix informed the plea court that he had been treated for several mental illnesses or mental conditions, including bipolar disorder, major depressive syndrome, oppositional and defiance disorder, and anxiety disorder. He thought he had been diagnosed with bipolar disorder when he was about five, and "over the years" he had been in "a lot of behavioral mental hospitals." He testified that his conditions did not interfere with his ability to think clearly or make rational decisions at the plea hearing.[3]

---

[2] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[3] "All persons are presumed to be free of mental disease or defect excluding responsibility for their conduct . . . ." § 552.030.6. "The issue of whether any person had a mental disease or defect excluding responsibility for such person's conduct is one for the trier of fact to decide upon the introduction of substantial

Hendrix repeated the charges and the ranges of punishment and stated that no one made any promises, threats, or pressured him to plead guilty, and that he was pleading guilty voluntarily and of his own free will. Hendrix affirmed that he had several meetings with plea counsel to discuss and review his options, and he had discussed his options with family members and friends. Hendrix stated that he was clear in his own mind and had no doubts or reservations that he wanted to proceed to plead guilty. The plea court reviewed Hendrix's trial and appellate rights that he would give up and waive by pleading guilty.

Upon inquiry by plea counsel, Hendrix testified that he understood that the second-degree murder charge was a dangerous felony that automatically carries a mandatory eighty-five percent requirement before a person can be considered for parole, so that he would be required to serve at least eighty-five percent of the twenty-five-year sentence for that charge. Hendrix also admitted the factual basis for his plea. Upon inquiry by plea counsel, he testified: on May 26, 2010, in Jackson County, Missouri, he acted in concert with a group of people, some of whom were armed with guns, to unlawfully enter a residence to steal items and, in fact, took items out of the house; during the course of the burglary, a man was killed by a firearm inside the residence; and Hendrix knowingly and intentionally participated in the burglary knowing that firearms were going to be used.

Satisfied that Hendrix had demonstrated a knowing and voluntary intention to enter the guilty plea, the plea court accepted Hendrix's guilty plea and, based on the plea agreement, sentenced him to twenty-five years imprisonment for second-degree murder, fifteen years imprisonment for armed criminal action, and fifteen years imprisonment for burglary in the first

---

evidence of lack of such responsibility. But, in the absence of such evidence, the presumption shall be conclusive." *Id.* "[T]he burden rests upon the accused to show by a preponderance or greater weight of the credible evidence that the defendant was suffering from a mental disease or defect excluding responsibility at the time of the conduct charged against the defendant." *Id. See also Zink v. State*, 278 S.W.3d 170, 183 (Mo. banc 2009).

degree, with the sentences to run concurrent to each other. The plea court then informed Hendrix of his post-conviction rights. The plea court also inquired whether Hendrix had any complaints or criticisms of plea counsel's representation. Hendrix agreed that plea counsel had answered all of his questions to his satisfaction, did everything to fully investigate his case, and did everything asked of him. Hendrix had no criticism of plea counsel's representation.

Hendrix timely filed a *pro se* Rule 24.035 motion. Hendrix's post-conviction counsel subsequently timely filed an amended motion. The amended motion alleged that Hendrix's plea counsel failed to thoroughly investigate a defense under section 552.030,[4] and had he done so, Hendrix would not have accepted the guilty plea and would have been able to present a defense at trial based upon mental disease or defect ("NGRI defense").

After an evidentiary hearing, the motion court entered its Judgment granting Hendrix's amended Rule 24.035 motion. The motion court set aside the judgment accepting the plea and vacated the sentence imposed therein.

The State appeals.

## Standard of Review

An order sustaining a motion filed under Rule 24.035 is a final judgment for purposes of appeal by the State. Rule 24.035(k). Appellate review is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. *Id.* The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression that a mistake has been made.

---

[4] All statutory references are to the Revised Statutes of Missouri 2000, as updated. "'Not guilty by reason of mental disease or defect excluding responsibility' (NGRI) is considered an affirmative defense, requiring the defendant to carry the burden of proving that he has a mental disease or defect excluding responsibility." *State v. Walkup*, 220 S.W.3d 748, 755 (Mo. banc 2007) (citing § 552.030.6).

4

*Dunlap v. State*, 452 S.W.3d 257, 262 (Mo. App. W.D. 2015). The movant has the burden of proving his claims for relief by a preponderance of the evidence. Rule 24.035(i).

**Analysis**

The State's sole point on appeal is that the motion court clearly erred in granting Hendrix's motion for post-conviction relief because Hendrix failed to carry his burden at the evidentiary hearing to demonstrate that plea counsel was constitutionally ineffective for failing to investigate a possible mental disease or defect defense. "'To succeed on an ineffective assistance of counsel claim based on inadequate investigation, movant must specifically describe the information the attorney failed to discover, allege that a reasonable investigation would have resulted in the discovery of such information[,] *and prove that the information would have aided or improved movant's position*.'" *Smith v. State*, 413 S.W.3d 709, 716 (Mo. App. E.D. 2013) (emphasis added) (quoting *Yoakum v. State*, 849 S.W.2d 685, 688 (Mo. App. W.D. 1993)).

In Hendrix's amended motion, he claimed that his guilty plea was not knowing, voluntary, and intelligent because plea counsel rendered ineffective assistance in that he "failed to thoroughly investigate a defense under RSMo 552.030. Had he done so, Hendrix would not have accepted the guilty plea, and would have been able to present a defense at trial based upon mental disease or defect." In support of his ground for relief, Hendrix alleged the following: he had been in and out of mental institutions since he was five years old; he was diagnosed with bipolar disorder, schizophrenia, major depression disorder, oppositional defiant disorder, and ADHD, for which he was prescribed various powerful psychotropic drugs; and plea counsel made no effort to seriously investigate a defense under section 552.030. Hendrix claimed that had plea counsel thoroughly investigated a defense under section 552.030, such investigation would have reflected that Hendrix "lacked the capacity to understand and agree to a conspiracy,

5

to an in concert enterprise, to which he eventually pleaded guilty and which was the predicate felony for his murder conviction."

At the Rule 24.035 evidentiary hearing, however, Hendrix did *not* produce any evidence of what a fuller investigation into an NGRI defense would have produced. The State argues, thus, that both the amended motion and the evidence at the Rule 24.035 hearing are nothing more than speculation and conjecture insufficient to meet Hendrix's burden of proving prejudice. We agree.

At the evidentiary hearing held on Hendrix's amended Rule 24.035 motion, Hendrix testified that he had been diagnosed with impulsive control disorder, bipolar disorder, manic depression, oppositional defiance disorder, borderline schizophrenia, and anxiety disorder, and had been prescribed psychotropic drugs. He was first institutionalized for mental health care or treatment when he was five or six years old, and he spent the majority of his life in State homes or institutions. Hendrix had been released from the custody of the State about five months before the offense; and at the time of the offense, he was enrolled at the University of Missouri, Kansas City, and was living in a dormitory.

Hendrix testified that he remembered meeting with a mental health examiner retained by plea counsel, but he did not cooperate with the mental examination because he did not know who she was. He only talked to her for about ten minutes before the examiner terminated the interview. Hendrix testified that he told plea counsel that he wanted to talk to the private examiner again, but plea counsel told him that he did not believe that they should pursue the mental defense.[5]

---

[5] Plea counsel testified at the Rule 24.035 evidentiary hearing that, though he had engaged the services of the mental health examiner for the purpose of determining whether Hendrix was competent to stand trial, he was not certain whether the examiner was able to successfully complete the mental health exam (which she wasn't) or what the privately retained examiner told him about Hendrix's competency. Plea counsel testified: "For some reason,

In the motion court's Judgment granting Hendrix's amended Rule 24.035 motion, the motion court itemized its conclusions as to the *Strickland* performance prong as follows:

> Considering [Hendrix's] long history of mental health afflictions and psychotropic medications, [plea counsel's] failure to investigate the nature of [the private examiner's] two-question mental examination, and [plea counsel's] reliance on that investigation in foregoing an NGRI [not guilty by reason of insanity] defense [fell] below any reasonable threshold for investigating and adjudicating an NGRI defense or any other mental health issue.

The motion court concluded that plea counsel "should have thoroughly investigated the nature of the medical examination performed by [the private examiner] and/or taken other investigative approaches into [Hendrix's] mental state before determining that a[ not guilty by reason of insanity] defense or diminished capacity defense would not succeed at trial."[6]

While we do not necessarily disagree with the plea court's analysis of plea counsel's constitutionally deficient performance, performance is only one of the two prongs of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), as interpreted by *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), which Hendrix must satisfy in order to prevail on a claim of ineffective assistance of counsel.

---

and I may be wrong, but I had the impression that [the mental health examiner] . . . indicated to me that [Hendrix] appeared to be competent, but I don't really know a specific." Instead of pursuing a follow-up mental health examination to ascertain his client's mental status, plea counsel advised Hendrix that "it's a likely lifetime commitment to the Department of Mental Health if someone goes by route of not guilty by reason of insanity." Though plea counsel testified he would not have allowed Hendrix to plead guilty if he believed there was a "legitimate issue" as to his mental status, the motion court clearly believed plea counsel's conclusion was based upon incomplete and inadequate investigation on that topic.

[6] The motion court examined plea counsel's performance under *Hemme v. State*, 680 S.W.2d 734 (Mo. App. W.D. 1984), a case that was decided within months of the Supreme Court's decision in *Strickland*. However, the *Hemme* opinion failed to cite or address the two-pronged analysis established in *Strickland* and, frankly, failed to address the prejudice prong under the burden of proof analysis required by *Strickland*, instead assuming prejudice from the inadequate mental disease investigation. *Id.* at 737. Thus, we question the precedential value of *Hemme* and caution the continued reliance upon *Hemme*, at least as to the required prejudice prong analysis of the *Strickland* test. That said, the motion court articulated factual findings in its judgment that support a conclusion of constitutionally deficient performance of plea counsel under the performance prong of the *Strickland* test, and nothing in our ruling today should be taken to suggest that it was reasonable for plea counsel to ignore an aborted mental examination due to Hendrix's lack of cooperation.

The two-prong *Strickland* test requires proof by a preponderance of the evidence that: (1) Hendrix's plea counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; ***and*** (2) Hendrix was prejudiced as a result. "If either the performance prong or the prejudice prong is not met, then we need not consider the other, and [Hendrix's] claim of ineffective assistance of counsel must fail." *Neal v. State*, 379 S.W.3d 209, 216 (Mo. App. W.D. 2012) (citing *Strickland*, 466 U.S. at 670). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

When a conviction results from a guilty plea, "any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." *Stanley v. State*, 420 S.W.3d 532, 548 (Mo. banc 2014) (internal quotation omitted). The "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Here, the motion court's findings simply do not address the relevant "prejudice" issue under *Hill*, instead concluding that Hendrix's waiver of his mental health defenses was "uninformed," because he, his plea counsel, and his family "lacked adequate information with which to assess and evaluate any mental defenses." This is not the same as concluding that there is a reasonable probability that Hendrix *would have insisted on going to trial*. The dilemma with which the motion court was presented was not created by the motion court; it was created by Hendrix failing to equip the motion court with relevant "prejudice" evidence. Though Hendrix

8

presented evidence at the Rule 24.035 evidentiary hearing that he had, in the past, been diagnosed with mental health illnesses (the fact of which the plea court was well aware prior to accepting the guilty plea), he presented no evidence as to what further investigation by plea counsel would have demonstrated regarding investigation into an NGRI defense. Perhaps more importantly, Hendrix presented no evidence that the results of a fuller NGRI defense investigation created a reasonable probability that Hendrix would not have pled guilty.

For example, at the Rule 24.035 evidentiary hearing and in Hendrix's briefing to this Court, Hendrix emphasizes that plea counsel should not have discontinued investigation into the possibility of an NGRI defense after the first attempted expert mental examination was aborted due to Hendrix's refusal to cooperate. Instead, Hendrix argues that plea counsel should have followed up with another mental evaluation. In fact, Hendrix testified at the Rule 24.035 evidentiary hearing that he would have cooperated with an expert mental evaluation if his plea counsel had arranged for a second exam. And yet, at the Rule 24.035 evidentiary hearing, Hendrix produced no evidence as to what this mental evaluation would have demonstrated. Hendrix did not even testify at the hearing that, had the mental exam been performed and had that exam demonstrated a viable NGRI defense, it would have had any impact on his decision to plead guilty.

Simply put, Hendrix did not produce evidence at the evidentiary hearing sufficient to demonstrate a reasonable probability that further investigation by plea counsel would have demonstrated a viable NGRI defense such that, but for plea counsel's inadequate investigation of Hendrix's alleged mental condition, he would not have pleaded guilty and would instead have insisted upon going to trial. Accordingly, after reviewing the entire record, we are left with the

definite and firm impression that the motion court clearly erred in granting Hendrix's motion for post-conviction relief.[7]

Point granted.

## Conclusion

The motion court's judgment is reversed.

_____
Mark D. Pfeiffer, Presiding Judge

Gary D. Witt and Anthony Rex Gabbert, Judges, concur.

---

[7] We also note that, though the issue was never argued by Hendrix in his Rule 24.035 motion, the motion court alternatively concluded that "legitimate issues remained regarding [Hendrix's] *competence* to stand trial." (Emphasis added.) Though the issue of Hendrix's competence was not properly before the motion court, it fails for much the same reason as we have discussed in today's ruling. As we have previously concluded in *Hubbard v. State*, "[t]he suspicion or actual presence of some degree of mental illness or need for psychiatric treatment does not equate with incompetency to stand trial [or plead guilty]." 31 S.W.3d 25, 34 (Mo. App. W.D. 2000) (internal quotation omitted). Here, again, the record demonstrates that Hendrix's mental state was such that there was the "actual presence of some degree of mental illness or need for psychiatric treatment" at all relevant times; however, there was no evidence presented at the Rule 24.035 evidentiary hearing that Hendrix was, in fact, incompetent to stand trial or plead guilty. In fact, as we have stated previously herein, incompetency at *any* time simply was not an argument submitted in Hendrix's Rule 24.035 motion. *Ex gratia*, then, we note that the motion court's competency commentary does not warrant the relief issued by the motion court.