

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **MILES E. WRAY,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD77839** |
| | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | **November 10, 2015** |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable R. Michael Wagner, Judge

Before Division One: Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge
and Cynthia L. Martin, Judge

Miles E. Wray ("Wray") appeals from the motion court's denial of his Rule 24.035 motion for post-conviction relief following an evidentiary hearing. Wray argues that his guilty plea was not knowing and voluntary because it lacked a sufficient factual basis. Wray also argues that his plea attorney provided ineffective assistance of counsel by affirmatively misinforming him of his lifetime duty to register as a sex offender and by failing to review discovery or to develop possible defenses to the crime charged.

Because the motion court did not clearly err, the judgment denying Wray's Rule 24.035 motion is affirmed.

## Factual and Procedural Background

Wray was indicted on the charge of child molestation in the first degree. The indictment alleged that Wray subjected C.B.D., a minor female, to sexual contact by touching her breasts. The indictment stemmed from statements given to the police by the victim and other witnesses. Wray also gave a written statement to police after waiving his Miranda[1] rights in which he admitted to being involved in a sexual situation with the victim.

Wray pleaded guilty to the charge on April 10, 2010. At the beginning of the plea hearing, the plea court read the charge to Wray and asked Wray if he understood the nature of the charges. Wray responded: "Yes. Your Honor." Wray said he had sufficient time to discuss his case with his attorney, and that he told his attorney all of the facts and circumstances surrounding his case. The plea court asked Wray's counsel to establish the factual basis for Wray's guilty plea. The following exchange took place:

> Counsel: Mr. Wray, on or about January 5, 2009, were you a resident of Cass County?
>
> Wray: Yes.
>
> Counsel: And on that date, did you have contact with a minor individual with the initials CVD [sic]?
>
> Wray: Yes.
>
> . . .

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Counsel: And at the time of the occasion where you had contact with the minor child whose initials are CVD [sic], is it true that you had sexual contact with that minor child by touching her breasts?

Wray: Yes.

Counsel: And when that act occurred in Cass County, Missouri, you knew that she was a child less than 14 years old?

Wray: Yes.

Wray also signed a guilty plea petition in which he acknowledged that he understood the nature of the charge, that his attorney advised him of the nature of the charge, and that he was guilty of the charge because he "had sexual contact with [victim] by touching her breasts." Wray told the trial court he signed each page of the petition to plead guilty, that trial counsel went over the petition with him, that he signed the petition freely and voluntarily, and that he wanted the plea court to accept the petition because he was guilty of the crime charged.

The State informed the plea court of Wray's statement to police after waiving his Miranda rights. Wray acknowledged that he voluntarily waived his Miranda rights, that he freely and voluntarily gave a statement to police, and that his statement could be used against him at trial. In his statement to the police, Wray admitted to "fingering" the victim by placing his hand in her pants for a few seconds before going to tell another person about the incident because he "felt bad."

The State informed the plea court of its agreement to recommend a suspended imposition of sentence and five years of probation in exchange for Wray's guilty plea,

3

with the understanding that Wray would have to register as a sex offender. Wray stated that he understood the terms of the plea agreement.

The plea court accepted Wray's guilty plea and sentenced him in accordance with the terms of the plea agreement. The plea court reminded Wray of his obligation to register as a sex offender.

Wray's probation was revoked on June 27, 2011, after he failed to complete a sex offender program and after he failed to report as a sex offender. The trial court imposed the suspended sentence of five years imprisonment, and Wray was thereafter delivered to the Department of Corrections. Wray filed a timely *pro se* Rule 24.035 motion, and appointed counsel filed a timely amended motion ("Motion"). The Motion alleged that: (1) no factual basis was established for Wray's guilty plea; (2) trial counsel was ineffective for affirmatively misinforming Wray about his lifetime obligation to register as a sex offender; and (3) trial counsel was ineffective for failing to provide discovery to Wray and for failing to review possible defenses with him.

Following an evidentiary hearing, the motion court denied the Motion.

Wray timely appealed.

## Standard of Review

Appellate review of a motion court's denial of a Rule 24.035 motion is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(k). "The movant bears the burden of establishing clear error, as we presume the motion court's findings are correct." *Flenoy v. State*, 446 S.W.3d 297, 301 (Mo. App. W.D. 2014) (citing *Baumruk v. State*, 364 S.W.3d 518, 525 (Mo. banc

4

2012)). "The [motion] court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression a mistake has been made." *Id.*

## Point One

In his first point on appeal, Wray argues that there was an insufficient factual basis for his guilty plea, rendering it unknowing and involuntary, because the legal definition of "sexual contact" was not explained to Wray at his plea hearing.

"Rule 24.02(e) requires the court to determine that there is a factual basis for a defendant's guilty plea in order to enter a judgment on the plea." *Burnett v. State*, 450 S.W.3d 800, 805 (Mo. App. W.D. 2014). "A factual basis for a guilty plea is necessary to ensure that the guilty plea was intelligently and voluntarily entered, thereby satisfying due process requirements." *Finley v. State*, 321 S.W.3d 368, 371 (Mo. App. W.D. 2010). "Due process does not require that the defendant, in pleading guilty, be informed of each element of the crime in question at the plea hearing . . . . [F]or a plea to be knowing and voluntary, the defendant must be informed of the elements of the offense either at the plea hearing or on some prior occasion, and he must understand them." *Mitchell v. State*, 337 S.W.3d 68, 71-72 (Mo. App. W.D. 2011) (internal quotations omitted). "A plea cannot be voluntary unless the defendant received 'real notice of the true nature of the charge against him.'" *Id.* at 70 (quoting *Henderson v. Morgan*, 426 U.S. 637, 644–45 (1976)).

Wray asserts that the nature or elements of the offense of child molestation in the first degree were never explained to him before he pleaded guilty. Section 566.067.1[2] provides that "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." Section 566.010(3) defines "sexual contact" as "any touching of another person with the genitals or *any touching of* the genitals or anus of another person, or *the breast of a female person*, or such touching through the clothing, *for the purpose of arousing or gratifying sexual desire of any person*." [Emphasis added.] Wray contends that although he admitted to having sexual contact by touching the breast of a female younger than fourteen years of age, the plea record does not establish that the legal definition of "sexual contact" was explained to him, and, thus, does not establish that his plea was knowing and voluntary.

The motion court concluded that it was unnecessary to explain the statutory definition of "sexual contact" to Wray as a part of the guilty plea proceeding in order to establish a factual basis for Wray's plea because a layperson would commonly understand that the phrase "sexual contact" connotes contact that is sexual in nature and not mistaken or innocent. We agree. The average person would understand that by admitting *sexual* contact with another, he or she is not admitting mere physical contact but instead contact that has the purpose of sexual arousal or gratification. Here, the guilty plea record included Wray's acknowledgment that he engaged in *sexual* contact by touching the breasts of a female under the age of fourteen. Wray offers no explanation for how his

[2] All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

6

admitted conduct could have been grounded in a misunderstanding about the meaning of the word "sexual" when used to refer to specific physical contact. "Where the allegations contained in the counts are 'simple, specific and sufficient to inform the defendant in terms that a layman would understand what acts he was charged with committing,' then a factual basis is established." *Finley*, 321 S.W.3d at 373 (quoting *Hoskin v. State*, 863 S.W.2d 637, 639 (Mo. App. E.D. 1993)). Because the term "sexual" "is a commonly-known, layman term, [Wray] failed to demonstrate that he was deprived of the actual knowledge of the factual basis" for the charge of child molestation in the first degree. *Finley*, 321 S.W.3d at 374.

Wray relies on *Hoskin* to argue to the contrary. However, his reliance is misplaced. In *Hoskin*, the court concluded that a factual basis for guilty pleas to the charges of "attempted sodomy" and "sexual abuse in the first degree" was not established by the defendant's bare admission to commission of both charges. 863 S.W.2d at 639-40. The court reached this result, however, because the nature of the conduct engaged in by the defendant was not factually developed during the plea proceedings. *Id*. This was fatally defective to the validity of the plea because the charged offense of attempted sodomy required proof of "deviate sexual intercourse," a term of unknown meaning on a "blank [factual] record." *Id*. at 639. And this was fatally defective to the validity of the plea because in admitting to the charged offense of sexual abuse in the first degree, the defendant admitted to "sexual contact" with the victim with no factual description of the contact. *Id*. at 639-40. *Hoskin* does not stand for the proposition that the legal definition of "sexual contact" must be explained to a defendant in order to establish a factual basis

7

for a guilty plea. Instead, *Hoskin* stands for the simple proposition that the conduct supporting a charged offense must be factually developed in a plea record where admission of the offense alone does not carry with it an inherent understanding of the nature of the defendant's criminal acts. *Id*. Here, in stark contrast to *Hoskin*, the manner in which Wray committed the offense of child molestation in the first degree was factually developed in the record. Wray admitted that he touched the breasts of a female victim and, that in doing so, he engaged in sexual contact. And "sexual" in reference to the nature of the contact has a commonly understood meaning requiring no further definition.

Wray's reliance on *Ennis v. State*, 887 S.W.2d 771, 772 (Mo. App. S.D. 1994) and *Kennell v. State*, 209 S.W.3d 504 (Mo. App. E.D. 2006) is similarly unavailing. In *Ennis*, the court set aside a guilty plea to the charge of attempted sodomy where the plea record failed to establish "the nature of defendant's acts which would constitute sodomy because the term deviate sexual intercourse is an unknown." 887 S.W.2d at 774. Though the defendant admitted having "sexual intercourse" with two victims, the legal definition of sexual intercourse was not consistent with the legal definition of "deviate sexual intercourse." *Id*. As in *Hoskin*, it was not the failure to legally define a term, but instead the failure to factually develop the defendant's conduct sufficient to support the charged offense that required the guilty plea to be set aside. *Id*. at 775. We have already explained that, in contrast, Wray admitted the specific contact with the victim giving rise to his charged offense and admitted that the contact was of a sexual nature--a phrase of ordinary and common connotation.

8

*Kennell*, the other case relied on by Wray, supports our conclusion. The court in *Kennell* rejected a defendant's effort to set aside a guilty plea to armed criminal action because the deadly weapon used in an underlying robbery was not described by the State. 209 S.W.3d at 506-08. Noting that "the term 'deadly weapon' used in the armed criminal action charge would be easily understood by most people to mean a gun, knife, or other weapon readily capable of causing death," the court distinguished *Hoskin* and *Ennis*. *Id*. at 508. We similarly conclude that although "sexual contact" is an essential element of child molestation in the first degree, and is limited to specific kinds of contact, the fact that proscribed contact must be "sexual" in nature is easily understood to refer to contact for the purpose of sexual arousal or gratification of any person. We thus conclude that by admitting that he had sexual contact with his victim by touching her breasts, Wray knowingly and voluntarily admitted that he committed the charged offense of child molestation in the first degree, even though "sexual contact" was not further defined during the plea proceeding to mean contact for the purpose of arousing or gratifying sexual desire of any person.

It is worth noting that the plea record included the police report where Wray admitted involvement in a sexual situation with the victim and admitted feeling bad about his contact with the victim. That Wray would now have us believe that he did not understand "sexual contact" to mean contact of a sexual (as opposed to innocent) nature defies credulity. "Because direct proof of the requisite mental state for the crime of child molestation is seldom available, the existence of such intent is usually inferred from circumstantial evidence and the permissible inferences that can be drawn therefrom."

9

*Wagoner v. State*, 240 S.W.3d 159, 166 (Mo. App. S.D. 2007). "The inferences drawn from the evidence by the motion court were reasonable and were sufficient to establish a factual basis for [Wray's] guilty plea." *Id.*

The motion court did not clearly err in determining that a sufficient factual basis existed when Wray entered his guilty plea.

Point one is denied.

## Point Two

In his second point on appeal, Wray argues that trial counsel was ineffective because she affirmatively misled him about his lifetime obligation to register as a sex offender upon pleading guilty. Wray asserts that had he known of the lifetime requirement to register as a sex offender, he would not have pleaded guilty and instead would have proceeded to trial.

"To establish a claim for ineffective assistance of counsel, a defendant must demonstrate (1) that counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation and (2) that the defendant was prejudiced by counsel's failure." *Stanley v. State*, 420 S.W.3d 532, 548 (Mo. banc 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To show defective performance by counsel, a defendant "must show by a preponderance of the evidence that [counsel's] actions fell below an objective standard of reasonableness." *Neal v. State*, 379 S.W.3d 209, 215 (Mo. App. W.D. 2012). "To show prejudice . . . the defendant must prove that, but for the errors of counsel, he or she would not have pleaded guilty and would have demanded a trial." *Stanley*, 420 S.W.3d at 548. "If either the performance

10

prong or the prejudice prong is not met, then we need not consider the other . . . ." *Neal*, 379 S.W.3d at 216.

"If [a] conviction results from a guilty plea, any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." *Stanley*, 420 S.W.3d at 548 (internal quotations omitted). "[F]or a plea to be voluntary and knowing, the defendant must be advised of the direct consequences of his plea." *McCoy v. State*, 456 S.W.3d 887, 893 (Mo. App. W.D. 2015). "Although it is necessary to inform a defendant of all direct consequences of a guilty plea, plea counsel is not required to inform a defendant of collateral consequences." *Id.* "[I]ssues concerning . . . the requirement to register as a sex offender are generally deemed to be collateral consequences of a guilty plea; plea counsel is therefore not required to discuss such matters with a defendant in order for the defendant's guilty plea to be considered knowing and voluntary. *Id.*

"However, the distinction between direct and collateral consequences is unimportant and a different rule applies where counsel misinforms his client regarding a particular consequence and the client relies upon the misrepresentation in deciding to plead guilty." *Miller v. State*, 260 S.W.3d 393, 394 (Mo. App. W.D. 2008) (internal quotations omitted). "In cases where counsel affirmatively misinforms a client about *any* consequence of pleading guilty, direct or collateral, and thereby causes such client to possess a mistaken belief regarding his sentence, the critical test is whether a reasonable basis exists in the record for such a mistaken belief." *McCoy*, 456 S.W.3d at 895-96 (emphasis in original). "A defendant's mistaken belief regarding a collateral consequence

11

may render his plea not voluntary if (1) the mistake is reasonable and (2) the mistake is based upon a positive representation upon which the defendant was entitled to rely." *Id.* at 896 (internal quotations omitted).

Wray argues that trial counsel affirmatively misinformed him about his lifetime requirement to register as a sex offender upon pleading guilty. Wray claims that trial counsel advised him that he would not have to register as a sex offender and that he first learned of the obligation to register as a sex offender during the plea hearing.

Wray's trial counsel testified during the Motion hearing that she spoke to Wray twice about his obligation to register as a sex offender before he pled guilty. The first discussion occurred when Wray called to ask her if he "could get out from underneath registration" due to the circumstances of his crime. Trial counsel testified that she told Wray that there was a provision that could allow the court to release him from his obligation to register as a sex offender, but only if Wray petitioned the court and the court accepted that petition. The second discussion occurred before the plea hearing when trial counsel was reviewing the petition to enter a guilty plea with Wray. Trial counsel testified that she and Wray discussed where he would live while on probation in order to be a compliant registered sex offender. Trial counsel denied ever advising Wray that he would not be required to register as a sex offender. The motion court found trial counsel's testimony to be credible, a finding that we will not disturb on appeal. *See Barton v. State*, 432 S.W.3d 741, 760 (Mo. banc 2014) ("This Court defers to the motion court's superior opportunity to judge the credibility of witnesses.").

Because trial counsel did not affirmatively misinform Wray about his lifetime obligation to register as a sex offender upon pleading guilty, Wray has failed to meet his burden to establish deficient performance by trial counsel, rendering it unnecessary to address the prejudice prong. *Neal*, 379 S.W.3d at 216.[3]

Point two is denied.

## Point Three

In his third point on appeal, Wray argues that trial counsel was ineffective because she failed to adequately investigate the discovery in Wray's case, failed to effectively review discovery with Wray, and failed to develop possible defenses prior to his guilty plea. Wray asserts that trial counsel's defective performance rendered his guilty plea unknowing and involuntary. Wray's burden to establish ineffective assistance of counsel in this regard is the same as discussed in connection with his second point on appeal, and need not be repeated.

Trial counsel testified that she reviewed all the discovery in the case, noted there were discrepancies in the witness and victim statements given to police, and reviewed those discrepancies with Wray in person while he was incarcerated. Trial counsel testified that after she reviewed the police reports with Wray, he understood the inconsistencies in the witness and victim statements, he told her that the touching was

---

[3] The motion court concluded with respect to the prejudice prong that it was disingenuous for Wray to testify that he would have proceeded to trial had he known of the lifetime sex offender registration requirement given that his charged offense carried a five to fifteen year prison sentence, he made admissions to law enforcement, and he made admissions to a witness that the State would have introduced at trial. Additionally, trial counsel testified that Wray was eager to get out of jail and was "more than happy" to accept the State's plea offer of a suspended imposition of sentence because "what that would mean is he essentially would go home" after the plea hearing if the trial court imposed the terms of the plea agreement.

13

consensual, and that he thought the victim was lying in some of her statements to police. Trial counsel testified that she discussed the admissions Wray made to the police and determined that she would not be able to suppress those admissions. Trial counsel said Wray understood that if he proceeded to trial, he could use the victim's inconsistent statements as a defense, but that the State would introduce his admissions to the police. Trial counsel testified that she gave copies of the police reports to Wray's father to give to Wray after her initial meeting with Wray in jail.

Trial counsel also testified that had Wray gone to trial, she planned to use the inconsistent witness and victim statements as a defense, and that in preparation for trial, she investigated a diminished capacity defense for Wray. However, the mental health assessment trial counsel secured revealed that Wray did not have a cognizable defense based on a mental illness. The assessment did reveal, however, that Wray was not a high risk to reoffend, a determination trial counsel used to negotiate the plea agreement with the State. The State initially offered a plea agreement recommending an eight-year sentence if Wray pleaded guilty. After reviewing Wray's mental health assessment, the State offered a plea agreement recommending a suspended imposition of sentence and probation if Wray pleaded guilty, the agreement Wray accepted.

Wray testified that he was not aware that the victim or other witnesses made statements to the police. Wray said he never received copies of the police reports. Wray testified that trial counsel did not discuss with him the discrepancies in the witness and victim statements given to police. Wray testified that he thought the only evidence against him were his admissions to the police. Wray also testified, however, that trial

14

counsel reviewed police reports with him while in jail and that he remembers seeing law enforcement records but that he did not understand what they were or recognize them to be witness statements.

The motion court determined that trial counsel's testimony was credible and that Wray's testimony was not credible. We defer to the motion court's credibility determinations. *Barton*, 432 S.W.3d at 760. Wray has failed to sustain his burden to establish that trial counsel's actions fell below an objection standard of reasonableness, and, thus, has not proved that Carter provided him with ineffective assistance of counsel. As a result, we need not address the prejudice prong. *Neal*, 379 S.W.3d at 216.[4]

The motion court did not clearly err in denying Wray's claim that Carter provided him with ineffective assistance of counsel.

Point three is denied.

### Conclusion

The motion court's judgment denying Wray's Motion is affirmed.

Cynthia L. Martin
_____
Cynthia L. Martin, Judge

All concur.

---

[4] Were we to reach this prong, Wray would not be able to sustain his burden, as he has never identified any information or defense that trial counsel failed to discover, or how that information or defense would have aided his position. *Hendrix v. State*, WD 77353, 2015 WL 3751386, at *3 (Mo. App. W.D. June 16, 2015) (holding that "[t]o succeed on an ineffective assistance of counsel claim based on inadequate investigation, movant must specifically describe the information the attorney failed to discover, allege that a reasonable investigation would have resulted in the discovery of such information[,] and prove that the information would have aided or improved the movant's position"). Here, in fact, trial counsel's efforts led to Wray's psychological evaluation in aid of a possible defense of diminished capacity. The result of those efforts appear to have single-handedly led to a highly favorable plea agreement with the State.

15