

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| CLAYTON R. DUNLAP, | ) | |
| | ) | |
| Appellant, | ) | WD76751 |
| | ) | |
| vs. | ) | Opinion filed:  January 13, 2015 |
| | ) | |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**THE HONORABLE KATHLEEN A. FORSYTH, JUDGE**

Before Division Two:  Joseph M. Ellis, Presiding Judge,
Victor C. Howard, Judge and Mark D. Pfeiffer, Judge

Clayton Dunlap appeals from the denial of his Rule 24.035 motion for postconviction relief after an evidentiary hearing.  Dunlap's motion alleged that counsel was ineffective for failing to investigate and present mitigation evidence at sentencing and failing to investigate the allegedly unconstitutional collection of his blood.  On appeal, Dunlap argues that the motion court applied the incorrect standard to determine prejudice to his claim of ineffective assistance of counsel at sentencing and also that the motion court erroneously failed to make findings on his claim of ineffective assistance of counsel based on counsel's failure to investigate and move to

suppress evidence obtained as a result of the warrantless, nonconsensual seizure and search of Dunlap's blood. The judgment is reversed and remanded in part and affirmed in part.

## Factual and Procedural Background

In December of 2010, Dunlap pleaded guilty to charges in three separate cases for conduct committed on three separate occasions in 2009 and 2010. The charges were for three separate incidents of class D felony driving while revoked in violation of section 302.321, one class D felony resisting a lawful stop in violation of section 575.150, one class B misdemeanor driving while intoxicated in violation of section 577.010, one class A felony murder in the second degree in violation of section 565.021, and one class C felony assault in the second degree in violation of section 565.060. Dunlap pleaded up to the court, that is, there was no agreement as to what the sentence would be. Dunlap was informed of the range of punishment, the court inquired to ensure that his plea was knowing, voluntary, and intelligent, and a factual basis was established for the pleas. The court then accepted Dunlap's guilty pleas and ordered a sentencing assessment report.

The sentencing hearing was held on January 14, 2011. The State presented testimony from several witnesses. Detective Tommy Woods testified that on March 27, 2010, he went to the scene of a fatal car crash in which five cars had been involved, one person died, and six people were injured. He testified that Dunlap's vehicle had been traveling between 62.8 and 65.9 miles per hour, and the posted speed limit was 35 miles per hour. Detective Woods testified that Dunlap had collided with four vehicles, killing one young man and injuring others. He testified that Dunlap was under the influence of benzodiazepine, PCP, and cannabis. Dunlap's vehicle hit a median, crashed into a pole, and then flipped over and struck the other vehicles.

2

Members of the family of the young man who was killed in the crash testified about the young man, their relationships with him, and the effect his death had on them. The witnesses urged a long sentence for Dunlap, because he was "too dangerous with no intention of stopping," he "should pay separately for all his crimes," he was "a true menace to society and should not be allowed to return," he shouldn't be "give[n]… a chance to do this to another family," he needed to be prevented from "hurt[ing] another family," and because "the parents and citizens of Kansas City" needed to be protected from his "maliciousness and carelessness." The State also submitted letters from additional witnesses close to the fatal crash victim.

Dunlap, his niece, his sister, and another witness who had known Dunlap for at least sixteen years testified for the defense. Dunlap apologized to the victim's family, said he did not expect their forgiveness, but that he hoped they would find some measure of peace. Dunlap's niece, sister, and the other witness testified about Dunlap's good qualities, his embarrassment about his addiction and remorse about the death of the crash victim, and urged eventual forgiveness for Dunlap from the victim's family. Defense counsel provided the sentencing court with examples of other cases where similar crimes had resulted in ten- and eleven-year sentences.

The State recommended thirty years, four years, and four years respectively for the three separate incidents of class D felony driving while revoked, four years for the class D felony resisting a lawful stop, 180 days for the class B misdemeanor driving while intoxicated, thirty years for the class A felony murder in the second degree, and seven years for the class C felony assault in the second degree. The State recommended all the sentences to run consecutively. In addition to reiterating the loss suffered by the families involved in the crash, the State argued for its recommendation by emphasizing Dunlap's extensive criminal history, the egregious facts of

Dunlap's crime in the instant case, and that a long sentence was "the only way to protect society after [Dunlap's] long history of terrible driving and conscious choices he made to violate the law[.]"

Defense counsel then argued that Dunlap had not intended to cause a death and that the underlying felony, driving while revoked, was not a violent crime, and therefore should not receive the maximum sentence, which counsel argued should be reserved for intentional crimes. Defense counsel encouraged the court to give Dunlap the opportunity to learn and become a contributing member of the community and not to sentence him based on "a public outcry for revenge," but rather to sentence him based on his intent to "drive when he knew he shouldn't." Defense counsel urged a fair sentence.

The court explained that its sentence was not directed solely toward punishment, but rather primarily toward the protection of the community from a known threat, and secondarily as a deterrent to Dunlap in the future and others in the meantime to show that conduct like that to which Dunlap pled guilty would not be tolerated. The court then pronounced its sentences of (1) thirty years for the class A felony murder in the second degree, four years for one count of the class D felony driving while revoked, and seven years for the class C felony assault in the second degree, to run concurrently; (2) four years for the class D felony resisting a lawful stop, four years for another count of the class D felony driving while revoked, and 180 days in county jail for the class B misdemeanor driving while intoxicated; the sentences for (1) and (2) to run consecutively; and (3) four years for the other count of the class D felony driving while revoked, to be served concurrently with the other two sentences.

Subsequently, Dunlap filed a pro se and then an amended Rule 24.035 motion, alleging counsel was ineffective. He first alleged that counsel was ineffective for failing to investigate

4

and present mitigation evidence at sentencing regarding the possibility of brake malfunction as a cause of the collision, possible errors in the speed calculation by the State's accident reconstruction expert, and a computer generated report indicating the average sentence for the class B felony of involuntary manslaughter, section 565.024(3). The motion also alleged ineffective assistance for failing to investigate the allegedly unconstitutional collection of Dunlap's blood.

An evidentiary hearing was held on Dunlap's motion. It was stipulated that Dunlap's vehicle had been at a tow lot available for inspection until April 17, 2012, at which time it was sold at auction. Defense counsel testified that Dunlap told her there may have been something wrong with the brake system in his car. Dunlap testified that he told counsel he had problems with his brakes, saying that he "started hitting [the] brakes, it was making like a uh-uh-uh-uh, bouncing back to me, wouldn't stop[.]" He testified that counsel told him that she "looked and found out something about the brakes was 50-50," but that he did not know what she meant, and that she never would say whether she was going to present evidence about the brakes. Defense counsel did not investigate that possibility because it would not have provided a defense and she believed it would not provide mitigating evidence. She also stated that the faulty brakes did not change the main issue of Dunlap's operating the car at all.

Regarding the sentencing report claim, counsel said yes when asked if it would have been relevant to determine what the sentencing recommendations might have been for involuntary manslaughter arising out of driving while intoxicated. She agreed when asked if it would have been beneficial to the court to have calculated that the recommended mitigating sentence for that crime was shock probation or drug treatment, the average sentence was seven years in prison,

and the aggravated sentence was nine years. She agreed that the range for a class A felony, to which Dunlap pled guilty, is ten to thirty years.

Dunlap testified that he did not know his blood had been tested until he was looking through the discovery in his case, saying he thought he was supposed to "sign a form or something before," but instead his blood was taken while he was unconscious, which he said was "going against [his] constitutional rights" and would have affected his decision to plead guilty had he known before he pleaded. Dunlap said he never talked to counsel about the issue. He further acknowledged that he said yes at the guilty plea hearing when asked if he knew he was giving up the right to attack what the police did in his case and challenge the State toxicology results for alcohol and PCP.

The motion court denied Dunlap's motion, concluding that he offered "mere speculation that there was evidence of improper[ly] functioning breaks" and explaining that even had he shown brake malfunction, "it would not have negated the fact that he was guilty of the underlying felony of driving while revoked, high on PCP, and that his negligence caused the death of a child." The motion court also concluded that counsel's decision not to investigate for brake malfunction was reasonable because it was unlikely such investigation would have affected the State's ability to prove any fact needed to meet its burden of proof. Regarding Dunlap's claim regarding the speed calculation, the motion court found Dunlap pled guilty with the knowledge that he was precluded from challenging the State's evidence, including the speed calculation, and that such evidence "was immaterial to the State's meeting its burden of proof." As to Dunlap's claim that counsel was ineffective for failing to argue an involuntary manslaughter sentencing structure, the court found that there was no evidence that there would have been a different outcome of the plea process if counsel had done so.

6

Specifically, the motion court reasoned that

> when a Movant is claiming ineffective assistance of counsel with regard to a guilty plea, the question is whether the constitutionally ineffective performance affected the outcome of the plea process, not the outcome of the sentencing phase of the proceedings. Thus, the question is not whether the sentence would have been different had Movant's counsel made such an argument, but whether Movant's decision to plead guilty would have been different. Movant offers no proof or persuasive argument that any decision his attorney made with respect to sentencing argument would have affected his decision to plead guilty.

The motion court therefore denied Dunlap's motion. Dunlap appeals.

## Standard of Review

Appellate review of the denial of a post-conviction relief motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Roberts v. State*, 276 S.W.3d 833, 835 (Mo. banc 2009). Findings and conclusions are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Roberts*, 276 S.W.3d at 835. The movant bears the burden of showing by a preponderance of the evidence that the motion court clearly erred. *Id.*

## Analysis

In his first point on appeal, Dunlap argues that the motion court applied the incorrect standard to determine prejudice to his claim of ineffective assistance of counsel at sentencing. Dunlap made two ineffective assistance of sentencing counsel claims: first, that counsel was ineffective for failing to investigate and present mitigation evidence concerning brake malfunction as a cause of the collision, and second, for failing to submit the sentencing guidelines report for involuntary manslaughter arising as a result of driving while intoxicated.

To succeed on a claim of ineffective assistance of counsel, the movant must prove by a preponderance of the evidence that: (1) counsel failed to exercise the level of skill and diligence

7

of a reasonably competent attorney; and (2) that he was thereby prejudiced. *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A movant claiming ineffective assistance must overcome a strong presumption that counsel provided competent representation. *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005). To prove prejudice the movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, for a claim of ineffective assistance of counsel at sentencing, Dunlap had to show that but for sentencing counsel's errors in failing to investigate and present evidence regarding possible brake malfunction and failing to submit the recommended sentencing guidelines for involuntary manslaughter as a result of driving while intoxicated, the result of the sentencing would have been different, specifically, that his sentence would have been lower. *Cherco v. State*, 309 S.W.3d 819, 827, 829-30 (Mo. App. W.D. 2010).

Here, the motion court expressly analyzed both of Dunlap's claims of ineffective assistance of counsel at sentencing as a determination of "whether the constitutionally ineffective performance affected the *outcome of the plea process*, not the outcome of the sentencing phase of the proceedings." (emphasis added). This analytical perspective resulted in findings and conclusions that do not relate to whether Dunlap met the applicable standard: whether counsel's investigation and presentation of evidence on brake malfunction and submission of recommended sentencing guidelines for involuntary manslaughter as a result of driving while intoxicated would have resulted in Dunlap *receiving a lower sentence*.

The motion court's analysis under the proper standard may well have resulted in the same decision. Applying the wrong standard, however, is reversible error. *Stirling v. Maxwell*, 45 S.W.3d 914, 916 (Mo. App. W.D. 2001). It would be improper, while declaring that the court

8

applied the wrong standard, to infer what its judgment would have been had the correct standard been employed. As such, this Court must reverse the judgment as to Dunlap's first point on appeal. We remand the matter to the circuit court with instructions that it apply the appropriate standard and issue findings of fact and conclusions of law in accordance with that standard.

Dunlap argues in his second point that the motion court erroneously failed to make findings on his claim of ineffective assistance of counsel based on counsel's failure to investigate and move to suppress evidence obtained as a result of the warrantless, nonconsensual seizure and search of Dunlap's blood. Rule 78.07(c) mandates that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." "The purpose of Rule 78.07(c) is to ensure that complaints about the form and language of judgments are brought to the attention of the trial court where they can be easily corrected, alleviating needless appeals, reversals, and rehearings." *Gerlt v. State*, 339 S.W.3d 578, 584 (Mo.App. W.D.2011). "[W]hen a movant in post-conviction proceedings fails to file a motion to amend the judgment pursuant to Rule 78.07(c), he has preserved nothing for review insofar as his claim pertains to the form or language of a judgment." *Id.*

Here, the parties agree that Dunlap, although he filed a motion to amend the judgment pursuant to Rule 78.07(c), did not argue the issue of the motion court's failure to make findings and conclusions on his claim of ineffective assistance related to the seizure and search of Dunlap's blood in that motion. The State contends that by failing to argue the issue in his motion, Dunlap waived the claim of his second point on appeal. Dunlap asserts that, because this appeal and remand were necessitated by the issues of his first point, it is appropriate and within the purpose of Rule 78.07(c) to order the motion court to make findings and conclusions

9

in accordance with his second point on appeal, as well.  Dunlap's failure to include this issue in his motion to amend the judgment, however, preserves nothing for our review, as it specifically pertains to the mandatory requirements of Rule 78.07(c).  *Gerlt*, 339 S.W.3d at 584.  Dunlap's second point on appeal is dismissed for failure to preserve review.

_____

VICTOR C. HOWARD, JUDGE

All concur.