

# Missouri Court of Appeals
## Western District

| | |
|---|---|
| CHRISTOPHER A. SCOTT, | ) |
| | ) WD86373 |
| Appellant, | ) |
| v. | ) OPINION FILED: |
| | ) |
| STATE OF MISSOURI, | ) November 26, 2024 |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Boone County, Missouri
The Honorable J. Hasbrouck Jacobs, Judge**

**Before Division Three: Mark D. Pfeiffer, Presiding Judge,
Thomas N. Chapman, Judge, and Janet Sutton, Judge**

Christopher Scott ("Scott") appeals a judgment of the Circuit Court of Boone County that denied relief on his Rule 29.15 postconviction relief motion. On appeal, Scott argues that the motion court erred by misunderstanding one of his claims. The judgment is affirmed.

## Background

Following a jury trial, Scott was convicted of first-degree robbery, armed criminal action, and unlawful use of a weapon. He was sentenced to ten years of imprisonment on the robbery conviction, three years for armed criminal action, and two years for unlawful

use of a weapon, with the armed criminal action sentence to run consecutively to the robbery sentence, and with the sentence for unlawful use of a weapon to run concurrently to the other sentences.

The facts of Scott's underlying criminal case, as stated in the unpublished memorandum accompanying this Court's order issued in Scott's direct appeal, *State v. Scott*, 636 S.W.3d 208 (Mo. App. W.D. 2021), were as follows:

> On the night of January 28, 2019, T.J. was working as a clerk at a Break Time convenience store in Columbia, Missouri. Right before 11:00 p.m., a man wearing a mask and a black hoodie entered the store. He pointed a handgun "directly" at T.J. and told her, "Don't touch nothing." T.J. was "really scared" by the man's actions; she thought he was going to shoot her. The man demanded that T.J. get the money from the drawer and then open the safe. T.J. was so afraid that she was unable to open the safe, so she told the man how to open it. The man opened the safe and ordered T.J. to get him a bag. The man then put the money from the drawer and the safe in the bag and left. T.J. had seen the man in the store at least once or twice before, but she did not know his name.

> After the man left, T.J. locked the door and called the police. The police quickly arrived, and T.J. told them what had happened. T.J. was still afraid; her voice and hands were trembling, and she was holding back tears. The manager came to the store and watched the surveillance video with police. When he saw and heard the man in the video, he recognized the appellant, Scott. The manager had worked with Scott at Break Time in the past.

> The next morning, the manager determined that $900 was missing from the safe. Money was also missing from the cash register, which normally held between $100 and $200. The stolen money included one- and five-dollar bills.

> A detective assigned to the case watched the surveillance video and noticed that the handgun was "unique looking" and "distinctive" and resembled a handgun in another case that he had investigated. He retrieved the file and photos from the previous investigation and discovered that the

handgun in that case appeared to be the same handgun used in the Break Time robbery. The handgun in the previous case had been released from police custody to Scott.

On January 31, 2019, police went to a residence where Scott was supposed to be staying about a half mile from the Break Time store. Scott had been staying there with one of the resident's daughters. The resident gave police consent to search the residence and pointed out the room Scott had been using. Police saw the barrel of a handgun sticking out from under the bed in that room. They collected a black and silver Hi-Point brand 380-caliber ACP pistol, a black hoodie, and plastic sacks with the words "Thank You" printed in red. A Mediacom bill with Scott's name on it was also found in the bedroom. The handgun had the same serial number as the handgun released to Scott by police several months before. It was test-fired and functioned properly.

Police arrested Scott the same day at his place of work. Red gloves matching the gloves worn by the robber were found in Scott's coat pockets. Scott was carrying 59 one- and five-dollar bills totaling $143.

Scott's convictions were affirmed on direct appeal. The appellate court mandate was issued on January 19, 2022.

Scott timely filed a *pro se* Rule 29.15 motion for postconviction relief on April 11, 2022. Along with his *pro se* Rule 29.15 motion, Scott filed a motion to proceed *in forma pauperis*. The motion court granted the motion on April 14, 2022 and notified the Office of the Public Defender. Appointed counsel filed an amended Rule 29.15 motion on August 4, 2022.

In his amended motion, Scott argued, *inter alia*, that he had received ineffective assistance of counsel due to his counsel's failure to raise a double jeopardy objection

3

pursuant to section 556.041(4).[1] Scott argued that he could not be punished for both first-degree robbery and unlawful use of weapon, and that his trial counsel was ineffective in failing to move to dismiss the unlawful use of a weapon charge.

On March 16, 2023, the motion court held a hearing on Scott's Rule 29.15 motion for postconviction relief. Trial counsel testified that he had researched the double jeopardy issue but found no basis in the law for raising the double jeopardy claim. Thereafter, the motion court entered judgment, denying relief on the claims raised in Scott's postconviction relief motion. With regard to Scott's claim that his counsel was ineffective for failing to raise a double jeopardy objection, the motion court concluded that counsel was not ineffective because a double jeopardy objection would not have been meritorious because the offense of first-degree robbery and the offense of unlawful use of a weapon each required proof of a fact that the other did not.

Scott now appeals to this court.

**Timeliness of Scott's Amended Motion**

The motion court found that Scott's amended motion was timely pursuant to Rule 29.15(g). In its Respondent's Brief, the State agreed that Scott's amended motion was timely, and that the version of Rule 29.15(g) in effect throughout the entirety of the postconviction proceedings provided Scott with 120 days from the appointment of counsel to file an amended motion. However, the State subsequently took the position

---

[1] Unless otherwise indicated, statutory references are to RSMo 2016, as updated through the 2018 cumulative supplement.

4

that Scott's amended motion was not timely filed. The State now argues that the version of Rule 29.15 that was in effect at the time of Scott's sentencing applied to his proceedings. This Court must determine which version of Rule 29.15(g) applied to the filing of Scott's amended motion because this determination could bear on the timeliness of the motion. *See Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012) (declaring that courts must enforce mandatory time limits in postconviction proceedings regardless of whether the State raises the issue).

The Missouri Supreme Court has indicated that Missouri Supreme Court Rules are to be interpreted by applying the same principles used for interpreting statutes. *State ex rel. Richardson v. May*, 565 S.W.3d 191, 193 (Mo. banc 2019). If the Supreme Court's intent is clear from the plain and ordinary language of its rule, then the plain meaning of the rule is adopted. *State v. Williams*, 696 S.W.3d 316, 319 (Mo. banc 2024) (citation omitted).

Article V, section 5 of the Missouri Constitution grants the Missouri Supreme Court the authority to establish procedural rules and provides that such rules "shall have the force and effect of law." Mo. Const. art. V, § 5; *Williams*, 696 S.W.3d at 318. Generally, laws that are merely procedural apply to pending proceedings upon the effective date of such laws. *See State ex rel. Faith Hosp. v. Enright*, 706 S.W.2d 852, 854 (Mo. banc 1986) (citing *City of Branson v. Biedenstein*, 618 S.W.2d 665, 670 (Mo. banc 1981)); *cf. Stiers v. Director of Revenue*, 477 S.W.3d 611, 618 (Mo. banc 2016)

5

(declaring there to be "no question" that the rules of civil procedure in effect at the time of trial govern the procedural aspects of trial).[2]

As relevant, the version of Rule 29.15(g) that became effective on November 4, 2021 provided:

> If an appeal of the judgment sought to be vacated, set aside, or corrected is taken, the amended motion or statement in lieu of an amended motion shall be filed within 120 days of the earlier of the date both the mandate of the appellate court is issued and:
>
> > (1) Counsel is appointed, or
>
> > (2) An entry of appearance is filed by any counsel that is not appointed but enters an appearance on behalf of movant.

The appellate court mandate in Scott's direct appeal was issued on January 19, 2022. Scott timely filed his *pro se* motion on April 11, 2022; postconviction counsel was first notified of appointment on April 14, 2022; and Scott filed his amended motion on August 4, 2022. Unless some other rule was applicable and provided that a different version of

---

[2] Additionally, Rule 19.06 provides that Rules 19 to 36, inclusive, apply to criminal proceedings after the effective date of the rules unless application of said rules to pending proceedings would result in injustice. *See* Rule 19.06. Although Rule 29.15 proceedings are technically civil rather than criminal proceedings, *see* Rule 29.15(a), Rule 19.06 has previously been applied in Rule 24.035 proceedings, which mirror Rule 29.15 proceedings. *See Hayes v. State*, 139 S.W.3d 261, 263 (Mo. App. W.D. 2004). Additionally, Rule 29.15(a) provides that the procedure to be followed for Rule 29.15 motions "is governed by the rules of civil procedure insofar as applicable." Generally, Rule 44.06 provides that Rule 41 to 101, inclusive (*i.e.*, "The Rules of Civil Procedure"), govern all proceedings in actions brought after their effective date as well as to all further proceedings in actions then pending, except to the extent that the court finds their application would not be feasible or would work injustice. Regardless of whether either Rule 19.06 or Rule 44.06 specifically applies in Rule 29.15 proceedings, or whether the more generally applicable principles governing procedural laws apply, each of these sources of law supports the general rule that procedural rules apply to proceedings pending after the effective date of the rules.

Rule 29.15 applied, Scott had 120 days from the date of the issuance of the mandate and appointment of counsel (120 days from April 14, 2022) within which to file his amended motion, and thus timely filed his amended motion on August 4, 2022.

The Missouri Supreme Court sometimes includes in its adopted rules additional provisions that indicate which version of a particular rule is applicable to particular proceedings, and which may provide contrary to the general rule regarding when procedural rules apply. The version of Rule 29.15 in effect from January 1, 2018 through June 30, 2023[3] did contain a schedule paragraph located at Rule 29.15(m), which provided:

> (m) Schedule. This Rule 29.15 shall apply to all proceedings wherein sentence is pronounced on or after January 1, 2018. If sentence was pronounced prior to January 1, 2018, postconviction relief shall continue to be governed by the provisions of Rule 29.15 in effect on the date the motion was filed or December 31, 2017, whichever is earlier.

---

[3] By Order issued December 20, 2022 (effective July 1, 2023), the Missouri Supreme Court repealed Rule 29.15(m) and adopted a new Rule 29.15(m). The new version of Rule 29.15(m) provides:

> (m) Schedule. For sentences pronounced on or after January 1, 2018, postconviction relief proceedings shall be governed by the provisions of Rule 29.15 in effect on the date of the movant's sentencing. For sentences pronounced prior to January 1, 2018, postconviction relief proceedings shall continue to be governed by the provisions of Rule 29.15 in effect on the date the motion was filed or December 31, 2017, whichever is earlier.

However, this version did not become effective until after Scott's amended motion was filed and after Scott's postconviction proceedings had been litigated to a final judgment.

7

Scott was sentenced in November of 2020. Thus, if the version of Rule 29.15 to be applied was determined by the version of Rule 29.15(m) that was in effect throughout the entirety of Scott's postconviction proceedings, then Scott's postconviction proceedings would be governed by the provisions in effect at the time of the proceedings. Although Missouri courts have at times interpreted the schedule paragraphs in Rules 24.035(m) and 29.15(m) in a limited manner seemingly at odds with the plain language of such provisions,[4] the dispositive circumstance for purposes of the matter now before us is that Rule 29.15(m) did not indicate that any version of Rule 29.15(g) applied to Scott other than the version then in effect.

To recap, generally, procedural rules apply upon their effective dates to pending proceedings. In this matter, the version of Rule 29.15 in effect indicated that Scott had

---

[4] At times, Missouri courts have interpreted the schedule paragraphs contained in paragraph (m) of Rules 24.035 and 29.15 in a limited manner, in which the respective schedule paragraphs (m) were viewed as being limited to clarifying the applicability of other amendments made in the same Supreme Court Order in which the schedule paragraphs were amended. *See Whitt v. State*, 655 S.W.3d 202, 206 n.3 (Mo. App. E.D. 2022); *Hayes v. State*, 139 S.W.3d 261, 263 (Mo. App. W.D. 2004). Whether such interpretations will continue to be viable is questionable. By Order issued December 20, 2022 (effective July 1, 2023), the Missouri Supreme Court amended Rule 29.15(m) at a time in which no other amendments were made to Rule 29.15. Thus, current Rule 29.15(m) cannot now logically be interpreted as indicating an intent by the Missouri Supreme Court to craft a schedule limited to controlling the other amendments made in the same December 20, 2022 Order, because no other amendments to Rule 29.15 were made in the December 20, 2022 Order.

In this matter, Rule 29.15(g) provided Scott with 120 days from the appointment of counsel in which to file an amended motion. This result follows regardless of whether (1) it follows via the operation of the version of Rule 29.15(g) that went into effect on November 4, 2021, when read in light of the general rule that procedural rules apply upon their effective date to pending proceedings and the lack of any other rule specifying to the contrary, or whether (2) it follows via the operation of the amended Rule 29.15(g) that went into effect November 4, 2021, when read in light of the plain language of the version of Rule 29.15(m) that was in effect at the time of filing.

120 days from the appointment of counsel in which to file an amended motion. There was no contrary rule then in effect. Thus, Scott's amended motion, which was filed within 120 days of the appointment of counsel, was timely.[5]

---

[5] In arguing that Scott's amended motion was untimely, the State relied on the recent opinion by the Eastern District of our Court in *Smith v. State*, 697 S.W.3d 617 (Mo. App. E.D. 2024). In *Smith*, a movant was sentenced in October 2020. *Id.* at 618. The movant appealed, and the appellate court mandate was issued on December 9, 2021 at a time when counsel had already been appointed. *Id.* at 618-19. The movant then filed an amended motion on April 8, 2022. *Id.* at 619.

 *Smith* recognized that Rule 29.15(g) was amended on November 4, 2021 to extend the filing time for amended motions from 60 to 120 days. *Id.* However, *Smith* determined that the movant's motions were governed by the version of Rule 29.15 that was in effect at the time of his sentencing in October 2020. *Id.* at 619-20. In support of this proposition, *Smith* cited to Rule 29.15(m). *Id.* at 620.

 However, the version of Rule 29.15(m) that would support this proposition was not adopted until December 20, 2022 and did not become effective until July 1, 2023. As noted previously, the version of Rule 29.15 that was in effect from January 1, 2018 through June 30, 2023 contained a schedule paragraph (m) that provided: "This Rule 29.15 shall apply to all proceedings wherein sentence is pronounced on or after January 1, 2018." Thus, if the schedule in Rule 29.15(m) was dispositive of which version of Rule 29.15 applied, the version of Rule 29.15(m) in effect from January 1, 2018 through June 30, 2023 did not support the proposition that the rules in effect at the time of sentencing governed postconviction proceedings for movants sentenced after January 1, 2018 when those proceedings took place prior to July 1, 2023. Accordingly, we disagree with the proposition in *Smith* relied on by the State – that the rules in effect at the time of sentencing govern Rule 29.15 proceedings for movants sentenced after January 1, 2018 in the circumstance in which the time for filing the amended motion occurred after November 4, 2021 but before July 1, 2023. The version of Rule 29.15 in effect from November 4, 2021 through June 30, 2023 did not contain a schedule indicating that such proceedings (for a movant sentenced after January 1, 2018) were to be governed by the rules in effect at the time of such movant's sentencing. We rely on the general proposition that the version of procedural rules then in effect apply to pending proceedings where there is no applicable rule to the contrary then in effect. In this matter, even if the schedule in paragraph (m) applied and controlled which version of Rule 29.15 applied to Scott's proceedings, the version of Rule 29.15(m) in effect throughout the entirety of Scott's postconviction proceedings would dictate the same result as the general principle that the version of procedural rules then in effect apply to pending proceedings.

 As this opinion chooses not to follow *Smith v. State*, this opinion has been reviewed and approved by this Court *en banc* pursuant to Western District Special Rule 31 and Supreme Court Operating Rule 22.01.

**Standard of Review**

We review a motion court's judgment denying relief on a Rule 29.15 postconviction motion to determine whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(k); *Meiners v. State*, 540 S.W.3d 832, 836 (Mo. banc 2018). A judgment is clearly erroneous only if we are "left with a definite and firm impression that a mistake has been made." *Meiners*, 540 S.W.3d at 836 (citation omitted). "The movant has the burden of proving all allegations by a preponderance of the evidence." *Id.*; Rule 29.15(i). "Even if the stated reason for a motion court's ruling is incorrect, this Court will affirm the judgment if it is sustainable on other grounds." *Dorsey v. State*, 448 S.W.3d 276, 282 (Mo. banc 2014) (citing *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013)).

***Strickland* Standard**

To be entitled to postconviction relief based on ineffective assistance of trial counsel, the movant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The movant must establish that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Id.* If a movant makes an insufficient showing on either prong of the *Strickland* test, the movant's claim of ineffective assistance of counsel must be denied, and it is unnecessary to address the other prong. *Id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

10

To establish that counsel's performance was deficient, the movant must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The movant must overcome the "strong presumption that trial counsel's conduct was reasonable and effective." *Hosier v. State*, 593 S.W.3d 75, 81 (Mo. banc 2019) (quoting *Davis v. State*, 486 S.W.3d 898, 906 (Mo. banc 2016)). To overcome this presumption, "a movant must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.*

The movant must also "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. To do so, the movant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Hosier*, 593 S.W.3d at 81 (quotation omitted).

**Analysis**

In his sole point on appeal, Scott argues that the motion court erred in denying his postconviction relief claim because the court did not review the claim that he actually raised. Scott argues that the motion court denied his claim based on a theory of double jeopardy that was distinct from the theory that he had raised in his Rule 29.15 motion.

As relevant to this appeal, Scott claimed in his Rule 29.15 motion that he received ineffective assistance of counsel due to his counsel's failure to move to dismiss the

11

unlawful use of a weapon charge based on a double jeopardy theory.[6] More specifically,

Scott argued that he could not be convicted of both first-degree robbery and unlawful use

of a weapon pursuant to section 556.041(4).[7] The motion court found that Scott had

failed to establish that he had received ineffective assistance of counsel due to counsel's

failure to make a double jeopardy objection. This finding was based on the motion

court's conclusion that a double jeopardy objection would not have been meritorious as a

matter of law. In its judgment, the motion court indicated that this conclusion was based

on an examination of the elements of the charged offenses pursuant to section 556.041(1)

and the *Blockburger* test – concluding that Scott could be convicted of both robbery and

unlawful use of a weapon because each criminal conviction required proof of a fact that

the other did not. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). The

motion court's judgment did not include any specific findings or conclusions regarding

---

[6] As noted previously, the sentence Scott received for the unlawful use of a weapon conviction was ordered to run concurrently to his other sentences.

[7] In full, section 556.041 provides:

> When the same conduct of a person may establish the commission of more than one offense he or she may be prosecuted for each such offense. Such person may not, however, be convicted of more than one offense if:
> (1) One offense is included in the other, as defined in section 556.046; or
> (2) Inconsistent findings of fact are required to establish the commission of the offenses; or
> (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or
> (4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

section 556.041(4) – which prohibits multiple convictions of an offense for a single continuous, uninterrupted criminal act.

On appeal, Scott recognizes in his preservation statement that the motion court denied his claim of ineffective assistance of counsel on the merits. The denial of his claim was based on a purely legal conclusion. Nevertheless, Scott makes no arguments that the motion court erred in denying his claim because his claim had merit. He makes no arguments in this appeal that the motion court's legal conclusion – that a double jeopardy objection would not have been meritorious – was erroneous. Instead, he argues that the motion court examined his double jeopardy claim under a different theory (the *Blockburger* test) than the one he presented under section 556.041(4), and that, therefore, remand is necessary. That is, he argues that he does not need to establish that the motion court erred in denying his claim, but only that the motion court misunderstood his claim.

Although Scott claims that the motion court addressed his claim under a theory different than the one he raised, Scott fails to make an argument as to how addressing his theory would dictate a different result. Scott makes no arguments as to how separate convictions for separate offenses could pass muster under the *Blockburger* test, and nevertheless be violative of section 556.041(4). This is not a case in which Scott was convicted of having committed any offense multiple times. Rather, Scott was convicted of one count of robbery, and one count of unlawful use of a weapon. Scott has given no indication in this appeal as to how his theory could possibly give rise to a double jeopardy violation in light of the motion court's conclusions of law and the fact that Scott

was not convicted of having committed any one offense multiple times. In short, Scott takes no fault with what the motion court did find; faults its failure to address an alternative theory; and makes no argument that his convictions (for armed robbery and unlawful use of a weapon) were violative of section 556.041(4).

Only errors that result in prejudice warrant reversal. *Dawson v. State*, 611 S.W.3d 761, 766 (Mo. App. W.D. 2020) (citations omitted). To establish prejudice in this matter, Scott would need to show that the motion court's legal conclusion was in error. In other words, if the motion court's legal conclusion – that a double jeopardy objection would not have been meritorious – was correct, then Scott was not prejudiced by the motion court's failure to specifically address his theory under section 556.041(4). However, Scott makes no attempt to allege or establish such prejudice.

Scott's attempt to seek remand rather than challenge the motion court's legal conclusion that resulted in the denial of his claim is puzzling, given that Missouri courts have recognized that the question of whether an individual's double jeopardy rights have been violated is a question of law that appellate courts review *de novo*. *See State v. Kamaka*, 277 S.W.3d 807, 810 (Mo. App. W.D. 2009) (citing *State v. Glasgow*, 250 S.W.3d 812, 813 (Mo. App. W.D. 2008)). Thus, if Scott believed that the double jeopardy objection underlying his ineffective assistance claim would have been meritorious (and thus contrary to the legal conclusion of the motion court) then Scott could have raised

such an allegation of legal error to this Court and received *de novo* review of that legal

conclusion of the motion court.  However, no such arguments are raised in this appeal.[8]

We conclude, as all parties agree, that the motion court did address and deny

Scott's double jeopardy claim on the merits.  If Scott wished to challenge the motion

court's legal reason for denying his claim, he had the opportunity to do so by presenting

---

[8] In support of his assertion that remand is necessary, Scott relies on *Griffin v. State*, 937 S.W.2d 400 (Mo. App. E.D. 1997), and *Dunlap v. State*, 452 S.W.3d 257 (Mo. App. W.D. 2015).  *Griffin* dealt with a case in which the motion court had completely failed to address the merits of a claim.  *Griffin*, 937 S.W.2d at 401.  *Griffin* is clearly inapposite, as all parties agree that the motion court addressed Scott's claim on the merits.

In *Dunlap*, a motion court had analyzed a movant's ineffective assistance of counsel claim by applying the wrong standard for prejudice.  *Dunlap*, 452 S.W.3d at 262. The appellate court reversed.  *Id.*  The appellate court recognized that the motion court may have reached the same result if it had applied the correct standard.  *Id.*  However, the appellate court determined that it would be inappropriate to infer what the motion court would have found had the correct standard been applied.  *Id.*  Consequently, the appellate court reversed on that point and remanded for findings of fact and conclusions of law.  *Id.* at 262-63.

*Dunlap* is also clearly distinct.  Unlike the movant in *Dunlap*, Scott fails to argue that the motion court misstated the law in denying his claim.  Further, the motion court in this matter decided the ineffective assistance of counsel claim based on a conclusion of law.  Accordingly, Scott cannot establish that his asserted error was material unless the motion court's conclusion of law was erroneous.  Unlike the claim in *Dunlap*, in which the appellate court believed that there were factual issues to be decided by the motion court in the first instance under the appropriate standard, Scott's claim was decided based on a conclusion of law.  Although *Dunlap* did indeed state that applying the wrong standard is reversible error, the authority cited for this proposition was a general civil case.  *See Dunlap*, 452 S.W.3d at 262 (citing *Stirling v. Maxwell*, 45 S.W.3d 914, 916 (Mo. App. W.D. 2001)).  However, not every error constitutes reversible error, and an appellant must establish that the asserted error materially affected the merits of the action to establish reversible error.  *See Shallow v. Follwell*, 554 S.W.3d 878, 881 (Mo. banc 2018) (citing *Lozano v. BNSF Ry. Co.,* 421 S.W.3d 448, 451-52 (Mo. banc 2014)).

Moreover, although Scott contends that the motion court failed to address his claim under the theory he raised, it is also possible that the motion court found his theory to be so misplaced that the motion court instead attempted to analyze his claims under what the motion court believed to be the more relevant double jeopardy theory (the *Blockburger* test).

15

any such allegations of error to this Court in the present appeal.  However, Scott did not attempt to do so.

## Conclusion

The judgment is affirmed.

_____
Thomas N. Chapman, Judge

All concur.